Robert B. LANGWORTHY, Appellant,

v.

Albert PRESTON, III, Respondent.

No. WD 54779.

Missouri Court of Appeals,
Western District.

Sept. 1, 1998.

Robert Langworthy, Dwight Sutherland, Kansas City, for Appellant.

Spencer Brown, Kansas City, for Respondent.

SPINDEN, Judge.

Robert B. Langworthy, as personal representative of William C. Thomson's estate, appeals the probate court's judgment in which it declared that property which was purchased after Thomson married Christine Thomson was her separate property pursuant to the terms of an antenuptial agreement

and was, therefore, a part of her estate. Albert Preston, III, Christine Thomson's son, was personal representative of his mother's estate. Langworthy contends that the probate court erred by misinterpreting the antenuptial agreement's terms, by misapplying the law regarding the burden of proof, and by concluding that Thomson had agreed to terminate a tenancy by the entirety in the proceeds from the property's sale. Langworthy also contends that the probate court erred in disregarding evidence intended to support a claim for the return of living expenses given by Thomson to his wife because the probate court wrongly decided that his claim was outside the pleadings. We affirm the probate court's judgment.

The Thomsons' antenuptial agreement specified what property would remain separate property. They kept separate checking and brokerage accounts, and they filed separate tax returns.

 In his first point on appeal, Langworthy contends that the probate court misapplied the law concerning burden of proof. He argues that, because Thomson established "that there were numerous securities listed on the probate inventory that had been acquired during the term of marriage[,][t]he burden should then have shifted to [Preston] to show that these specific items of property were in fact separate property[.]"

His contention overlooks the agreement's plain language. Section III.B said, "Any property interest acquired by either party after their marriage to each other, whether real, personal or mixed, and not contained in Paragraph A ..., shall become and comprise part of their marital property[.]" The issue Langworthy had to prove, therefore, was not only that Thomson's wife bought the securities while married to him, but also that it was property not described in Paragraph A. He could not hope to prevail merely by establishing that the property's purchase date was after the Thomsons' marriage.

 He asserts that, because § 452.330.3, RSMo 1994, governing property division in divorces, creates a presumption that all property acquired during a couple's marriage is marital property, the same presumption should apply in this case. This presumption, however, never applied to the Thomsons' marriage. The presumption dissolved when the Thomsons entered into an agreement which provided that, in some cases, property acquired by either of them during their marriage still would be deemed separate property. See § 452.330.2(4). Langworthy's point is without merit.

In his second point, Langworthy argues that the circuit court erred in refusing to consider evidence that Thomson gave his wife nearly $300,000 for living expenses and that she deposited this money in a checking account to which only she held title. Langworthy asserts that "the gravamen of [Thomson's] claim was that under the Antenuptial Agreement [Thomson] was entitled to reclaim [the money] as his separate property."

Preston did not include these payments as an asset in his mother's estate, and Thomson did not make a specific claim for recoupment of them.[1] The probate court ruled that the payments were irrelevant to its consideration.

 We do not impose strict pleading rules on claims against probate estates, and probate courts are to construe pleadings liberally and to deem them sufficient if they are specific enough to give the personal representative of the estate notice of a claim's nature and extent and to permit the court to adjudicate the claim with finality. *Estate of Hedrick*, 808 S.W.2d 30, 32 (Mo.App.1991). Thomson's claim for allowance payments was not sufficient to state a claim that they were separate property. His claim for the allowance payments was for an amount in addition

---

1. His claim was for $625,000 which was the value he set for marital property contained within "all of the personal property listed on the Inventory of Property ... with the exception of furniture, household goods, and wearing apparel, ... acquired by the Decedent during her marriage to the Claimant; and ... a certain piece of residential property located in the town of East Hampton, ... Connecticut[.]" The amended inventory of property valued Christine Thomson's personal property at $1,084,650.39, and the category of furniture, household goods and wearing apparel totalled about $2000. Cash and bank accounts totalled approximately $27,000.

to what he specified in his original claim and articulated different grounds for recovery. His original claim was that the estate's inventory of property included marital property. His claim for return of the allowance payments asserts that they came from his separate account and, according to the antenuptial agreement, should be traced indefinitely as his separate property.

■ Langworthy's contention also overlooks Thomson's agreeing that the antenuptial contract authorized gifts by each to the other. The agreement did not provide for return of gifts. Nonetheless, to overcome a presumption that the transfers were gifts, *Houseman v. Houseman*, 815 S.W.2d 87, 88 (Mo.App.1991), Thomson's burden was to prove that he did not give the money to his wife voluntarily—that the gifts resulted from fraud or undue influence. Thomson did not plead fraud or undue influence. His point is without merit.

■ In his third point, Langworthy contends that the probate court erred in determining that the Thomsons agreed to terminate their tenancy by the entirety in the proceeds from sale of their Illinois farm because the evidence did not establish the severance. Langworthy argues that, according to the Thomsons' agreement, the Connecticut house which Christine Thomson bought with part of the proceeds should have been considered marital property which passed to Thomson when his wife died.

■ We affirm the probate court's determination that Thomson acquiesced in severance of his interest as a tenant by the entirety. A married couple holding property as tenants by the entirety may sever their tenancy by consent, agreement or acquiescence. *Merrill, Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 214 (Mo.App.1979). The court was free to consider their conduct or course of dealing in determining whether the couple acted by mutual effort to sever the tenancy. *Id.*

The Thomsons' estate planning lawyer testified that the Thomsons discussed with him what to do with the farm sale's proceeds and that they agreed that $200,000 should be transferred to Christine Thomson's separate account so she could buy the house. The couple further agreed, he said, that the remainder would be transferred to Thomson to fund a trust created by him. The lawyer confirmed the transfer of $200,000 to Christine Thomson in a letter addressed to both William and Christine Thomson. No evidence was introduced that Thomson did not receive the letter or that he objected to the transfer.

■ Langworthy complains that the probate court erred in refusing to consider the testimony of Thomson's daughter and his testimony, although he was not privy to the transfer, concerning Thomson's intentions. The probate court refused the evidence on grounds of hearsay and relevancy. We concur in the probate court's rulings and deny Langworthy's point.

■ Langworthy's fourth point is that the probate court erred in concluding that "under the plain language of the Antenuptial Agreement, all property of [Christine Thomson] owned at the time of her marriage to [Thomson], whether or not listed on the exhibits to the Antenuptial Agreement, ... was the sole and separate property of [Christine Thomson]." Langworthy argues that the Thomsons intended for the exhibits attached to the agreement, listing their separate property, to be exclusive lists. Because Christine Thomson did not list a bank account and because securities listed in the estate inventory were different from those listed in the agreement's exhibit, Langworthy contends the probate court should have deemed these to be marital property.

In § I, the agreement said:

Prior to becoming Husband and Wife, Christine and William desire that *certain property* now owned by each of them individually, as evidenced by the attached Exhibit A for Christine and the attached Exhibit B for William and certain property acquired by them after the marriage shall, for all purposes, be and remain their separate property, free and clear of any claim of the other that may arise by reason of

their contemplated marriage to each other.[2]

In § III, the agreement also said:

*All of the property,* whether real, personal or mixed, owned by each of the parties hereto upon execution of this Agreement or any property thereafter acquired by either party by descent, devise, bequest, gift or prior marriage settlement and the proceeds from the sale of any such property or new property received in exchange for said property regardless of when the sale or exchange takes place after the marriage, shall forever remain the sole and separate property of the respective parties during the marriage, and shall further forever remain the sole and separate property *of the party owning the same prior to their* marriage, free and clear of any claim of the other in the event said marriage is terminated by death or legal proceedings unless specifically provided for otherwise herein.[3]

Langworthy argues that § I's specific reference to "certain property" and § III's general reference to "[a]ll of the property" evidences the Thomsons' intent that the exhibits be the exclusive list of property covered by the agreement.

The probate court did not err in determining that the Thomsons intended for all of their property to be subject to the agreement. The reference to "certain property" in § I was synonymous to separate property. The agreement did not say that the exhibits were an exclusive list of their separate property. It merely was evidence of their separate property. Section III was quite clear that all of their separate property was to remain separate forever unless other, specified conditions intervened. We reject Langworthy's fourth point.

HOWARD, P.J., and BRECKENRIDGE, J., concur.