**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Respondent,**

v.

**Robert L. SHACKELFORD, Appellant,**

**The First National Bank of St. Joseph, Missouri, Garnishee,**

**Mary Alice Shackelford and Mrs. Ann Long, Appellants.**

No. KCD 29739.

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Gregory O. Grounds, Jones, McDaniel & Frankum, Kansas City, for appellant.

William H. Utz, III, St. Joseph, for First National Bank of St. Joseph.

Michael W. Lerner, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for Merrill Lynch, Pierce, Fenner & Smith.

Before WASSERSTROM, Chief Judge, Presiding, WELBORN, Special Judge, and HOUSER, Senior Judge.

HOUSER, Senior Judge.

First National Bank of St. Joseph was summoned as garnishee under a general execution issued to satisfy a judgment obtained by Merrill Lynch, Pierce, Fenner

& Smith, Inc. against Robert L. Shackelford in the sum of $8,473.89. The bank filed a pleading alleging that it had on its books a checking account in the names of Mr. and Mrs. R. L. Shackelford, and had in its possession a $100,000 U.S. Treasury Note registered to Robert L. Shackelford or Mrs. Alice Shackelford or Mrs. Ann Long, or the survivors or survivor; that the bank had no claim against the note; that as stakeholder the bank wanted to pay into court the amount of the checking account and deliver the treasury note to await final determination of the garnishment action and thereupon be relieved of any liability, and prayed that Mrs. Shackelford and Mrs. Long be made parties and required to plead. The Shackelfords will sometimes be referred to as "Mr. S" and "Mrs. S." In Mr. S.'s answer and in the answers of Mrs. S. and Mrs. Long, filed pursuant to order of interpleader, all three defendants claimed an ownership interest in the treasury note as joint tenants with rights of survivorship, and that the note was not subject to garnishment by Merrill Lynch.

Following trial to the court on the merits, without a jury, the trial court concluded that whatever interests Mrs. S and Mrs. Long might have in the treasury note, that interest was insufficient to prevent execution thereon for the indebtedness of Mr. S to the extent of the judgment plus interest; that, accordingly, Merrill Lynch had an immediate right to $9,164.80 of the proceeds from the treasury note. Judgment was entered for Merrill Lynch and against Mr. and Mrs. S and Mrs. Long, directing that the treasury note be liquidated to this extent, and that the balance remaining be paid to Mr. S. The Shackelfords and Mrs. Long appealed.

Robert and Mary Alice Shackelford are husband and wife. Mrs. Ann Long is their daughter. In April, 1973 Mr. and Mrs. S sold a farm, which they had owned as joint tenants for about eighteen years, for approximately $140,000. On May 15, 1973 Mr. S, using approximately $100,000 from the sale proceeds, purchased the U.S. Treasury Note. It was issued in the face amount of $100,000 in the names of "ROBERT L SHACKELFORD (557–01–6458) OR MRS MARY ALICE SHACKELFORD OR MRS ANN LONG OR THE SURVIVORS OR SURVIVOR". Asked how much money she contributed toward the purchase of the treasury note, Mrs. S answered, "Well, we had sold the farm we owned jointly. I would guess half." There is no evidence that Mrs. Long contributed anything to the purchase of the treasury note. Asked if he made a gift of any of the value of the treasury note to his wife or daughter Mr. S answered in the negative, stating that "[i]t wasn't (his) to make a gift."

On February 19, 1976 Mr. S signed a promissory note to the bank in the sum of $37,220. Mrs. S did not sign the note. Mr. S deposited the $100,000 U.S. Treasury note with the bank as collateral security for the $37,220 note. The promissory note recited that upon nonpayment of the note the bank could sell the collateral and that "The surplus, if any, after payment of this note and all other indebtedness whether due or not, owing now (or hereafter while any part of this note is unpaid) by the undersigned to the said Bank, for the payment of which other indebtedness the undersigned does also hereby pledge said collateral, shall be paid to the maker of this note."

Between February 19, 1976 and April 1, 1976 Mr. S made payments on the $37,220 note. On the latter date Mr. S made the final payment on the note, and the bank delivered the $100,000 treasury note to Mr. S. Four days later, on April 5, 1976, Mr. and Mrs. S went to the bank with the $100,000 treasury note for the purpose of cashing it. At the bank the two assigned the treasury note in blank on the reverse side, by writing their names: "Robert L. Shackelford" and "Mrs. Mary Alice Shackelford." Mrs. Ann Long did not accompany the Shackelfords to the bank. Mrs. Long did not assign her interest in the treasury note. The assignment form was not completed by an officer of the bank in compliance with the instructions for assignment printed on the treasury note. The only writings on the assignment forms are the signatures of Mr. and Mrs. S. Instead of

cashing the treasury note as requested, the bank, which had been served with garnishment process, held the note subject to the summons in garnishment.

Appellants make the point that in entering judgment for Merrill Lynch the trial court erred as a matter of law for the reason that the treasury note was held by the Shackelfords as tenants by the entirety and therefore the note was immune from execution to satisfy the claims of a creditor of one of the spouses.

Citing *Wilson v. Frost*, 186 Mo. 311, 85 S.W. 375 (1905), appellants contend that when Robert and Mary Alice Shackelford purchased the U.S. treasury note they held it in their joint names and therefore, being husband and wife, a presumption arose that they held it as tenants by the entirety, there being no language limiting the conveyance to a joint tenancy; that neither spouse had a separate interest in the property, under *Otto F. Stifel's Union Brewing Co. v. Saxy*, 273 Mo. 159, 201 S.W. 67 (1918), and that under *United States v. Hutcherson*, 188 F.2d 326 (8th Cir. 1951), the property could not be attached by a judgment creditor of one of the individual spouses.

In this jury-waived, court-tried case, the appellate court is obliged to sustain the trial court unless there is no substantial evidence to support it; unless it is against the weight of the evidence; unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Where two persons who are husband and wife become joint owners of personal property a presumption arises that they hold the property as tenants by the entirety. The presumption is that each spouse owns an undivided interest in the whole of the property. 15A Mo.Dig., Husband and Wife ⚖14.(2).

Presumably the form in which the treasury note was issued created an estate by the entirety unless, as Merrill Lynch contends, (1) the inclusion of the third party (their daughter, Mrs. Long) in the designation of ownership, or (2) the listing of the names of the three owners in the disjunctive rather than in the conjunctive, or (3) the failure to include the words "his wife" after Mr. S's name indicates an intention that each of the three owners have an equal right to the proceeds of the note, or unless (4) the presumption of tenancy by the entirety has been rebutted by acts and conduct of the Shackelfords evincing an intention to create some other estate. None of these contentions may be sustained.

(1) The inclusion of Mrs. Long as one of three owners did not put the presumption to flight or dictate the conclusion that this is a conveyance of one-third shares. "Deed to husband and wife and another person creates one undivided half in husband and wife as tenants by entirety, and the other undivided half in the other person as tenant in common * * *." Gill, The Missouri Law on Title to Real Property, 4th Ed., Vol. I, § 568. "A conveyance or devise to husband and wife and another, under the common law rule and insofar as such rule has not been changed by statute, vests the husband and wife with one moiety and the third person with the other moiety." 41 Am.Jur.2d Husband and Wife, § 63; *Daniel v. Wright*, 352 F.Supp. 1 (D.C.D.C.1972); *Adamson v. Adamson*, 273 Or. 382, 541 P.2d 460 (banc 1975). "Where real property is conveyed or devised to husband and wife and a third person or persons, the husband and wife, being but one person in law, will together take only an undivided moiety or half of the estate, * * *. As between themselves, husband and wife are tenants by entirety of their share, but as to the third person they are together a joint tenant or tenant in common with him." 41 C.J.S. Husband and Wife, § 31, f. p. 454. The same rules apply to estates in personal property.

(2) The use of the connective word "or" was not fatal to the creation of an entirety estate. In *Fulton v. Fulton*, 528 S.W.2d 146 (Mo.App.1975), a checking account in the names of "J. C. Fulton or Grace L." (they being in fact husband and wife) was held to create an estate by the entirety. " * * * [A]ll choses in action,

payable to *husband and wife* or to *husband or wife* are presumed to be estates by the entirety." *Cullum v. Rice*, 236 Mo.App. 1113, 162 S.W.2d 342 (1942), in which a bank account appeared under this designation: "Mrs. R. W. Rice, R. W. Rice," with the following stamped on the card, "Either of them, or to survivor in case of death of either." In *Hanebrink v. Tower Grove Bank & Trust Company*, 321 S.W.2d 524 (Mo.App.1959), a savings account listed as "Hanebrink, Ida or Mark, either or survivor" was held to give rise to the presumption that the account was held by the entirety. A bank account styled "Mrs. Viola Pavlik or William A. Pavlik (husband) either or the survivor" made the named parties hold the account as tenants by the entirety. *Feltz v. Pavlik*, 257 S.W.2d 214 (Mo.App.1953).

█ (3) The failure to include the words "his wife" or "husband and wife" does not destroy the presumption, where the two persons in question are in fact husband and wife. "It matters not that the account did not designate them as being husband and wife, for they were that in fact at all times herein concerned. *State Bank of Poplar Bluff v. Coleman*, 241 Mo.App. 600, 609, 240 S.W.2d 188, 190 ([Mo.App.] 1951)." *Fulton v. Fulton, supra*, 528 S.W.2d l.c. 157. "An estate by the entireties arises from a conveyance or devise to husband and wife, though the deed, will, or other instrument does not describe them as husband and wife or refer to their marital relationship, * *." 41 Am.Jur.2d, § 57, p. 63. "Where the grantees are husband and wife, it is not essential to the creation of an estate by entirety that they be so described in the deed; * * *." 41 C.J.S., § 31, b. (1), p. 446. And see Gill, The Missouri Law of Title to Real Property, 4th Ed., Vol. I, § 565.

We conclude that a valid tenancy by the entirety was created as between Mr. and Mrs. S, who, together, held a one-half interest in the treasury note in joint tenancy with their daughter, Mrs. Long, who owned the other one-half interest.

█ The next question is whether the presumption of tenancy by the entirety was rebutted by acts and conduct of the parties inconsistent with that estate. "Personal estates held by the entirety can be changed to other types of estates by consent, agreement or acquiescence." *Coffey v. Coffey*, 485 S.W.2d 167, 170 (Mo.App.1972); *Cooper v. Freer*, 385 S.W.2d 340, (Mo.App.1964), wherein the court said, l.c. 345: "The husband and wife can by consent, agreement, or acquiescence change the character of entirety property." A tenancy by the entirety may be severed during the lifetime of the parties by agreement, actual or implied, *Community Federal Sav. & Loan Assoc. v. Luckenbach*, 436 Pa. 472, 261 A.2d 327 (1970), "or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common." 48 C.J.S. Joint Tenancy, § 4, p. 928. The change, however, cannot be effected by the unilateral act, understanding or conduct of one of the spouses. To cause such a change the husband and wife must act together in a joint and mutual effort. " * * * [N]either the husband nor the wife owning personalty by the entirety can dispose of the whole or any part thereof without the consent, agreement or acquiescence of the other. * * * 'One of the incidents of a tenancy by the entirety is that any act affecting the title to property thus held must be by joint act. * * * ' " *Coffey v. Coffey, supra*, 485 S.W.2d l.c. 170.

Merrill Lynch contends that by pledging the treasury note as collateral for a personal loan to him Mr. S treated the note as if he had a separate and divisible interest therein, and acted in a manner inconsistent with his present claim that the entirety interest is immune to creditor claims. The alleged inconsistency is at once apparent. That Mr. S considered his interest separate and divisible is confirmed by the provision in the promissory note he signed that if the bank took over the collateral on default and sold the treasury note the surplus over the debt owed the bank should be paid to the maker of the note—Mr. S. The husband, acting alone, however, cannot change an entirety estate to some other estate. Act-

ing alone, Mr. S could not bind his wife by his individual act. *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith*, 396 S.W.2d 570, 580 (Mo.1965); *Bank of Jasper v. Langford*, 459 S.W.2d 97, 100 (Mo.App.1970). There is no evidence that Mrs. S had knowledge of, or that she consented, agreed, acquiesced in, or ratified, the act of Mr. S in pledging the treasury note to the bank.

Merrill Lynch had the burden of proving that Mrs. S joined Mr. S in or approved that act. Merrill Lynch has failed to meet the burden of proof of this vital fact. Merrill Lynch boldly asserts in its brief that Mrs. S "consented to the pledging of the Treasury Note as security for the individual debt of her husband", and that when she did so she "acted in a manner inconsistent with a tenancy by the entirety interest. She now urges that her interest protects the Treasury Note from being levied upon by her husband's creditors, whereas earlier she had been willing to give one creditor that very interest as security for her husband's debt." This assertion, of controlling importance if true, is not supported by evidence of record.

Accordingly, the tenancy by the entirety remained intact, and the case is governed by the rule that "[w]here a judgment and execution are against the husband alone such judgment cannot in any way affect property held by the husband and wife in the entirety. Neither can it affect any supposed separate interest of the husband, for he has no separate interest. (citing cases) * * * [T]here could have been no valid order on the garnishee to pay the amount of the savings account into court in the absence of evidence overcoming the presumption that the account was held by the entirety." *Hanebrink v. Tower Grove Bank & Trust Co.*, 321 S.W.2d 524, 527 (Mo.App.1959); *Flesher v. Carter*, 467 S.W.2d 276, 278 (Mo.App.1971). In *Cullum v. Rice, supra*, the bank account was in the names of "Mrs. R. W. Rice, R. W. Rice," with the following stamped on the bank card: "Either of them, or to the survivor in case of the death of either." A judgment creditor of the husband garnished the bank.

Holding that the agreement between the husband and wife and the bank created an estate by the entirety, the court ruled that " * * * the same is not subject to garnishment under execution to satisfy a judgment had against Mr. R. W. Rice." *Cullum v. Rice*, 162 S.W.2d l.c. 344.

For lack of evidence to support the judgment, in the rendition of which the court erroneously declared and applied the law, the judgment is reversed. Cause remanded with directions to order the $100,000 U.S. Treasury Note released and returned to Robert L. Shackelford, Mary Alice Shackelford and Mrs. Ann Long.