**In re Jerome L. STANKE, Debtor.**

**Bankruptcy No. 98–30919–JWV.**

United States Bankruptcy Court,
W.D. Missouri.

May 4, 1999.

Raymond I. Plaster, Springfield, MO, for debtor.

Norman E. Rouse, Joplin, MO, trustee.

*MEMORANDUM OPINION AND ORDER*

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on the Trustee's Objection to Exemptions filed December 17, 1998. The Debtor, Jerome L. Stanke, filed for relief under Chapter 7 of the Bankruptcy Code on October 16, 1998, and claimed that certain properties conveyed to a self-settled trust were exempt based on 11 U.S.C. § 522(b)(2)(B), which exempts property held with a non-debtor spouse as tenants by the entirety. Jerome's wife, Carol M. Stanke, has not filed for bankruptcy.

The Trustee disputes the characterization of the property as entireties property and, accordingly, objects to the Debtor's claims of exemption. For the reasons stated herein, the Court finds that the properties conveyed to the trust have lost their character as tenancies by the entireties properties and will sustain the Trustee's Objection to Exemptions.[1]

### FACTUAL BACKGROUND

On October 8, 1996, approximately two years prior to the bankruptcy filing, Jerome Stanke ("Jerome" or "Debtor") and Carol Stanke ("Carol") engaged in a series of transactions for estate planning purposes, apparently for the primary purpose of minimizing future tax liabilities. These transactions, which lie at the root of the Trustee's Objection, included (1) the creation of two trusts: the Carol M. Stanke Trust and the Jerome L. Stanke Trust (Trustee's Exhibits 64, 72) ("the Trusts"); (2) the execution of a "Tenancy Agreement" that purports to convert all of the Stankes' property held as joint tenants to tenancy in common property (Trustee's Exhibits 65, 70); (3) the execution of two documents that assign Jerome's and Carol's individual personal property to their

---

1. The Trustee has not alleged that the conveyances to the trusts were in any way fraudulent, so that is not an issue before the Court.

respective trusts (Trustee's Exhibits 66, 71); and (4) the transfer of several parcels of property[2] ("the Properties") owned by the Stankes to the Trusts. The Debtor claims that the Properties which have been transferred to both of the Trusts are still owned with his spouse as a tenancy by the entirety and therefore are exempt under Bankruptcy Code § 522(b)(2)(B).[3] Additional facts will be referenced hereinafter as necessary for an understanding of the legal issues.

## DISCUSSION

### I. Introduction

The critical issue in this case is whether the Stankes still hold the Properties as tenants by the entirety. If the Court finds that the Stankes have severed the tenancies, it must sustain the Trustee's Objection to Exemption, and the non-exempt separate property of Jerome would be included in his bankruptcy estate. Conversely, if it finds that the Stankes have not severed the tenancies and that the Properties retain their entireties character after transfer to the Trusts, the Court must deny the objection. We begin our inquiry with a review of the basic characteristics of a tenancy by the entirety in Missouri, paying special attention to how it can be terminated or severed.

The possessory estate known as a tenancy by the entirety is created in the same way as a joint tenancy—unity of time, title, interest and possession—with the additional qualification that a tenancy by the entirety can only be possessed by a husband and wife.[4] Commentary on Possessory Estates, Vol. 23 V.A.M.S., § 40, p. 37–38 (1949). Additionally, in contrast to a joint tenancy, which requires an affirmative statement of intent in order to create it instead of a tenancy in common, any conveyance of property to a husband and wife is presumed to create a tenancy by the entirety.[5] *Nelson v. Hotchkiss*, 601

---

2. The Properties are those contained in the deeds represented in Trustee's Exhibits 4, 5, 6, and 7. *See* appendix for a detailed description.

    The deed represented in Trustee's Exhibit 7 purports to convey a 40–acre tract in Luna County, New Mexico, from Jerome and Carol to the "Carol M. Stanke and Jerome L. Stanke Trust"—a non-existent trust. Whether the deed is void as written or will be construed as conveying the property to the Stankes' two existing trusts does not change the effect of this Court's ruling. Either way, the tenancy by the entirety held in the New Mexico property has been converted into a tenancy in common by the Tenancy Agreement and is not entitled to exemption under § 522(b)(2)(B).

3. Section 522 provides in pertinent part:
    (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
    ... (2)(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11   U.S.C. § 522(b)(2)(B).

4. The requirement that a tenancy by the entirety can only be held by a husband and wife is often referred to as the "unity of person." *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. 1980). And while possession by a married couple is still a requirement, the term unity of person is no longer used in Missouri because, in its traditional usage, unity of person meant that a spouse could be held liable, criminally or civilly, for the acts of the other spouse. *In re Markmueller*, 51 F.3d 775, 776 n. 3 (8th Cir.1995).

5. The Debtor spent considerable time in his brief and at trial discussing the approach Missouri courts have taken in regard to determining whether a deed conveying property to a husband and wife creates a tenancy in common or tenancy by the entirety. Although it is true that Missouri courts require a clear statement of intent in a deed, such as "Mr. and Mrs. X take as tenants in common and not as tenants by the entirety" in order to overcome the presumption that a conveyance to a husband and wife creates a tenancy by the entirety, that situation is different from the one in which a husband and wife wish to terminate or sever an existing tenancy by the entirety or in which the conveyance is made to the husband and wife as trustees and not as a marital unit.

S.W.2d 14, 18–19 (Mo. banc 1980); *Davidson v. Eubanks,* 354 Mo. 301, 189 S.W.2d 295, 297 (1945). This presumption is rebuttable, however, and a husband and wife may take property as joint tenants or tenants in common if language indicating which estate is being created is included in the conveying instrument. *Id.*

■ The other distinguishing characteristics of a tenancy by the entirety are that property held as such cannot be seized to satisfy the individual debts of one of the spouses, *Garner v. Strauss,* 952 F.2d 232, 234–35 (8th Cir.1991), and that the tenancy cannot be terminated, severed or generally "affected" by one of the spouses acting alone. *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 214–215 (Mo.Ct.App. 1979) (hereinafter *"Merrill Lynch"*); *Coffey v. Coffey,* 485 S.W.2d 167, 170 (Mo.Ct. App.1972). A husband and wife, however, can freely terminate the tenancy through their joint acts.[6]

Personal estates held by the entirety can be changed to other types of estates by consent, agreement or acquiescence. The husband and wife can by consent, agreement, or acquiescence change the character of entirety property. *A tenancy by the entirety may be severed during the lifetime of the parties by agreement, actual or implied, or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common.* The change, however, cannot be effected by the unilateral act, understanding or conduct of one of the spouses. To cause such a change the husband and wife must act together in a joint and mutual effort.

*Merrill Lynch,* 591 S.W.2d at 214 (emphasis added) (citations and internal quotes omitted).[7]

■ Because a tenancy by the entirety may be severed by "any conduct," the Court is not limited to an examination of the deeds (conveying the Properties to the Trusts) to determine whether the Stankes intended and did in fact sever the tenancies. Rather, the Court can and will look at all of the relevant circumstances surrounding the Stankes' intended disposition of the Properties. In particular, we will consider the overall significance of the Stankes' actions on August 8, 1996, the Tenancy Agreement, the Trust Agreement, and the deeds conveying the Properties to the Trusts.

However, before the Court begins its examination of the Stankes' conduct surrounding the disposition of the Properties, we briefly address the Debtor's argument that the Court's examination should be limited to the deeds because of the parol evidence rule.

The Debtor has argued, in his briefs and again during oral argument, that the parol evidence rule prevents the Court from considering any documents (most notably the Tenancy Agreement) other than the deeds because the deeds unambiguously convey entireties property to the Trusts. The Court does not find this argument persuasive.

As discussed earlier, Missouri law permits the Court to examine *any* joint conduct that indicates the parties' intent to sever the tenancy. Therefore, the Court's examination of the Stankes' conduct is not limited to the deeds, and the parol evidence rule is irrelevant.

6. When a tenancy by the entirety is severed, the result is a tenancy in common. *Ronollo v. Jacobs,* 775 S.W.2d 121, 123 (Mo. banc 1989); *Bruce v. Dyer,* 309 Md. 421, 524 A.2d 777, 782 (1987).

7. *See also, Langworthy v. Preston,* 975 S.W.2d 249, 251 (Mo.Ct.App.1998); *Cooper v. Freer,* 385 S.W.2d 340, 345 (Mo.Ct.App.1964); *Community Federal Savings and Loan Assoc. v. Luckenbach,* 436 Pa. 472, 261 A.2d 327, 329 (1970) ("[A] tenancy by the entireties may be severed ... either by agreement of the parties, actual or implied, or by judicial intervention.") (citations omitted).

The parol evidence rule generally prohibits the introduction of evidence of prior or contemporaneous agreements that vary or contradict the terms of an agreement. *J.R. Waymire Co. v. Antares Corp.*, 975 S.W.2d 243, 247 (Mo.Ct.App.1998). Because the Tenancy Agreement bears the same date as the Trust Agreement and Deeds, it is impossible to ascertain which was signed first, and no evidence has been offered in that regard. But, there are only two options (unless the Stankes are ambidextrous and very talented): the Tenancy Agreement was either signed before or after the deeds in question were signed. Either option renders the same ultimate result.

If the Tenancy Agreement was signed first, it would not vary the terms of the deeds. Rather, it would have fundamentally altered the character of the property transferred. The tenancy by the entirety would have been severed prior to the conveyances, and the Properties conveyed into the Trusts would be held as tenants in common by the Stankes. Additionally, because the deeds do not contain any language that would contradict this change in character, i.e., any description of the grantee or grantor's tenancy, the terms of the Deeds would not actually be varied or contradicted by the Tenancy Agreement, and the parol evidence rule would not be violated.

Alternatively, if the tenancy agreement was signed last, it would sever the tenancy in the property, regardless of its status in the trust. A contrary result would be inconsistent with the nature and spirit of the estate of tenancy by the entirety. The Stankes cannot claim the unique protections of the tenancy by the entirety but deny the effects of actions that would sever that tenancy under Missouri law.

8. For example, the Stankes executed two identical Tenancy Agreements even though one would have been sufficient, apparently for the purpose of providing a duly executed copy for each spouse. Unfortunately, the at-

## II. Severance of the Tenancy by the Entirety

### A. Overall Purpose of the August 8, 1996, Transaction.

In its determination of whether the Stankes severed the tenancies by the entirety in the Properties, the Court first considers the August 8, 1996, transaction as a whole. On August 8, 1996, the Stankes signed two tenancy agreements, two trust agreements, two assignments of personal property to the newly created trusts, and several deeds conveying property to the trusts. These documents were all executed for the apparent purpose of creating two trusts that would have favorable tax consequences for the Stankes and their heirs. The documents also funded the trusts by transferring the Stankes' property to the trusts. The Stankes have not contested this characterization of the August 8, 1996, transaction.

An extensive discussion of trust and probate tax law is unnecessary, but the Court does note that the Stankes could not achieve their ostensible purpose unless they had severed the tenancy by the entirety when they transferred the Properties into the Trusts. 26 U.S.C. § 2056. *See also,* BORIS I. BITTKER AND LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES AND GIFTS § 129.6 (2nd ed.1993).

Although it is possible that the Stankes simply failed to properly execute all of the necessary documents, or for some unknown reason, intended to reap the tax benefits on all of their property *except* the Properties in question, in light of the transaction considered in its entirety and the detail and thoroughness of the transaction,[8] it is highly unlikely that the Stankes did not intend to convey the Properties to the Trusts as tenants in common.

torney who drafted all of the documents is now deceased and there is no one to explain why certain things were done the way they were.

### B. The Tenancy Agreement

Various particular matters have been held to sever or terminate tenancy by the entirety, such as a judicial sale grounded on a jointly incurred debt or obligation, *jointly agreed change in title,* abandonment . . .

41 C.J.S. Husband and Wife, § 29, p. 324 (1991) (emphasis added).[9]

The Tenancy Agreement (Trustee's Exhibits 65, 70) signed by the Stankes on the same day as the deeds to the Properties appears to be exactly this kind of "jointly agreed change in title." The Agreement states in pertinent part:

Husband and Wife have created an estate plan using a revocable living trust and companion pour-over wills, and *they now wish to convert all or part of their joint tenancy property into tenancy in common property.*

Husband and Wife [the Stankes] *are aware that they may by agreement convert their joint tenancy property into tenancy in common property* so that they may better control their respective interests in the property on each of their deaths.

\*\*\*

*Husband and Wife hereby grant, convey, and transfer their respective interest in their joint tenancy property to themselves as tenants in common,* except that jointly-held property listed in Schedule A [which was blank] of this tenancy Agreement, if any. (emphasis added)

The intended effect of this Agreement is unmistakably clear. The Tenancy Agreement unambiguously converted all of the property acquired by the Stankes subsequent to their marriage on April 28, 1956, to tenancy in common property on August 8, 1996, including the Properties as defined herein.

The Court's interpretation of the Agreement is not affected by the Agreement's use of the term "joint tenancy" rather than tenancy by the entirety because the Stankes referred to themselves as "Husband and Wife" repeatedly in the document, indicating a connection between their status as husband and wife and the tenancy to which they are referring; the Debtor has never disputed, at trial or in his brief, the Trustee's characterization of the agreement as severing the tenancies by the entirety; and in light of the apparent goal of the entire transaction, it is clear that the Stankes intended to use the Tenancy Agreement to sever the tenancy by the entirety interests they held in all of their property.

### C. The Trust Agreement

As the Trustee correctly points out in his brief, the Jerome L. Stanke Trust (as well as the Carol M. Stanke Trust) contains provisions that would be inconsistent with the characteristics of a tenancy by the entirety, specifically, that property held as tenants by the entirety cannot be encumbered, sold, or (the tenancy) severed by the unilateral act of one of the owners. *Merrill Lynch,* 591 S.W.2d at 214–15; *Coffey v. Coffey,* 485 S.W.2d at 170 (tenants by the entirety take "per tout et non per my"—by the whole, and not by the moiety). The Court finds that the following provisions in the Trust document giving Jerome Stanke, as trustee and trustor, complete control over the property in his trust would be incompatible with a tenancy by the entirety:

9. *See also, State v. One 1984 Toyota Truck,* 69 Md.App. 235, 517 A.2d 103, 106 (1986) ("[T]he methods of terminating an estate of tenancy by the entireties in Maryland are: 1) death of a spouse; 2) an absolute divorce or annulment; 3) a judicial sale grounded on a jointly incurred debt or obligation; 4) a jointly agreed sale of the property; 5) abandonment, consumption, or destruction of the property; 6) *jointly agreed changes in title;* 7) eminent domain; 8) joint gift of the property to another; 9) joint bankruptcy.") (emphasis added).

1. *Article 1, Section 1. Parties to My Trust.* ... Either one of the above named Trustees [Jerome and Carol] may conduct business and act on behalf of the trust *without the consent of any other Trustee.*

2. *Article 1, Section 4—Trustor as Trustee. Notwithstanding any other provisions in this trust agreement,* when I am serving as Trustee under the trust, *I may conduct business and act on behalf of the trust without the consent of any other Trustee.*

3. *Article 2, Section 4—Acceptance of Trust Property.* All property transferred to my trust and not disclaimed by my Trustee *shall be held,* administered and distributed *according to the terms of this agreement.*

4. *Article 4, Section 1.c.—Right to Add or Remove Property.* By written direction delivered to my Trustee, I may add other property to my trust or *withdraw property in any amount and at any time.*

5. *Article 4, Section 2.c.—Power to Direct Investments.* I shall have the right to direct investments of trust property as follows: .. (c) Sell, encumber, lease, abandon, or dispose of any trust property.

The Debtor's argument that Article 13, sections 1 and 8 of the trust document limit Jerome's control of the trust so that it could not be used in a manner inconsistent with the nature of tenancy by the entirety is unavailing.[10]

First, the imposition of a fiduciary duty on the trustees by Article 13, section 8 has little bearing on the issue at hand because it would be possible for a trustee to act in accordance with the "purposes of my [Jerome's] trust" and still exercise control over the property in the trust in a manner inconsistent with a tenancy by the entirety. For example, if Jerome sold trust property and prudently reinvested the proceeds (for the benefit of the trust), he would be exercising control over property that would be impossible if it was entireties property, and yet he would not be violating his fiduciary duty to the trust.

Next, the Court does not find that Article 13, section 1 limits Jerome's actions as a trustee. This provision requires action by a majority vote where there are two or more "Trustees," but Article 1, section 1 states that either one of the "named Trustees," who are Jerome and Carol, may conduct business on behalf of the trust "without consent of any other Trustee." The apparent conflict between these two provisions is resolved if Art. 1, sec. 1 is read as a specific exception to Art. 13, sec. 1. "(A) specific provision controls a general one and may operate as an exception to it." Farnsworth on Contracts, § 7.11, p. 285 (1998). In other words, if there are two or more trustees and one of them is not a named trustee, i.e., Jerome or Carol, the trustees have to act by a majority vote. If either Jerome and Carol is a trustee, however, he or she may act unilaterally. To interpret these two provisions otherwise would render one of them surplusage and "an interpretation that gives effect to every part of the agreement is favored over one that makes some part of it mere surplusage." Farnsworth on Contracts, § 7.11, p. 283 (1998).

Finally, even if the Court was to find that Article 13, sec. 1 limits the actions of Jerome as *trustee,* Jerome's right under the trust to dispose of property as he sees fit is untrammeled in his capacity as the

10. Article 13, section 1: At any time that there are two or more Trustees serving under this agreement, they shall act by majority vote, and any exercise of a power or discretion by a majority of the Trustees shall have the same effect as an exercise by all of them.

Article 13, section 8: Notwithstanding any language purporting to confer absolute, sole or unrestricted discretion on my Trustee, in exercising any discretionary power with respect to this trust, my Trustee shall at all times, act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of my trust.

*trustor.* Article 4 of the trust delineates Jerome's rights as Trustor. Included in these rights is the right to withdraw or sell trust property. This right is not limited by any other provision in the trust, and, if exercised, would be incompatible with a trust comprised of tenancy by the entirety property. It would, however, be entirely compatible with tenancy in common property.

The Debtor's arguments also overlook the consequences of the resignation or removal of either Jerome or Carol as a trustee of the Trusts. It would be nonsensical to suggest that the Properties are tenancies by the entireties properties as long as Jerome and Carol continue as co-trustees, but that the tenancy would cease upon the resignation or removal of one of them as a co-trustee. A trustee's resignation or removal is not the sort of action that one would be expected to take to terminate a tenancy by the entirety, and, in fact, a trustee's resignation or removal should not affect the character of ownership of trust assets.

In sum, the Court finds that the presence of these provisions in Jerome Stanke's Trust document reinforces the conclusion that the Stankes intended to fund the Trusts with tenants in common property and accordingly severed the entirety interests they held in the Properties.[11]

### D. Ambiguity in the Deeds

The Debtor places great weight on the "fact" that the deeds (to the Properties) unambiguously convey tenancy by the entirety property to the Trusts. The Court disagrees with this characterization of the deeds. In fact, the Court not only finds

the deeds somewhat ambiguous in regard to the tenancy conveyed, it is inclined to interpret the language of the deeds more as an expression of the intent to *sever* the tenancies by the entirety, not to preserve them.

■ Because the deeds do not explicitly indicate the nature of the tenancy conveyed by the grantors or received by the grantees, we rely on common law presumptions used to interpret the deeds. The Debtor argues that because a conveyance to a husband and wife creates a presumption that they take as tenants by the entirety, the conveyance to Jerome and Carol in the deeds conveys such a tenancy to the Trusts. The Debtor's statement of the law is correct, but the Debtor fails to appreciate that the deeds did not just convey the Properties to Jerome and Carol, it conveyed them to "Jerome L. Stanke and Carol M. Stanke, *Trustees, or Their Successors in Trust,*" and conveyances to co-trustees are presumed to be taken as a joint tenancy. *Columbia Union National Bank and Trust Company v. Bundschu,* 641 S.W.2d 864, 877 (Mo.Ct.App.1982); G. Bogert, Law of Trusts § 145, p. 53 (1992).

Furthermore, the inference that the interest created in the grantees was different than that of the grantors is strengthened by the language the Stankes used in identifying the grantors and grantees. The Stankes referred to the grantors as "Jerome L. Stanke and Carol Stanke, *husband and wife* " and the grantees as "Jerome L. Stanke and Carol Stanke, *Trustees.*" If we apply the rule of construction *expressio unius est exclusio alterius* —the expression of one is the exclusion of all others—the fact that the Stankes used the terms "husband and wife" in the grantor

---

11. Although it is not crucial to the holding in this case, the Court does note that it is unsure how it would characterize the interests held in the entireties property if the Stankes had not severed the tenancy through their conduct. Would the Properties be held as tenants by the entirety by two trusts, the Jerome L. Stanke Trust and the Carol M. Stanke Trust? This would seem to violate the requirement that only married *persons* can hold real property as tenants by the entirety. Or would the Properties be held by four people— Jerome and Carol as co-trustees of Jerome's Trust and Jerome and Carol as co-trustees of Jerome's Trust? Again, this would run afoul of the requirement that a tenancy by the entirety can only be held by a married *couple.*

clause and did not use them in the grantee clause actually indicates that they did not intend to take the property as husband and wife, and therefore did not intend to take the property as tenants by the entirety.

## CONCLUSION

For the foregoing reasons, the Court finds that the Stankes' acts and conduct in establishing the trusts and conveying the Properties surrounding the disposition of the Properties clearly indicate an intent to sever the tenancies by the entirety and rebut the presumption that the conveyances of the Properties were to the Stankes as tenants by the entirety. The result is that the Properties, now held in the Jerome L. Stanke trust, are held as tenants in common by Jerome and Carol and therefore Jerome's interest is not exempt under § 522(b)(2)(B).

For the foregoing reasons, it is

**ORDERED** that the Trustee's Objection to Exemptions claimed by Debtor Jerome L. Stanke is hereby **SUSTAINED** as to those properties specifically described in the Appendix of this Memorandum Opinion and Order and any personal property in which the Debtor claimed an exemption pursuant to 11 U.S.C. § 522(b)(2)(B).

The Clerk shall enter judgment in accordance with this Order.

**SO ORDERED.**

## APPENDIX—THE PROPERTIES

The properties are as follows:

| | |
|---|---|
| **Trustee's Exhibit 4**<br>General Warranty Deed<br>dated 8/8/96 | The NE¼ of the SW¼ of the SW¼ and the NE¼ of the NW¼ of the SW¼ of the SW¼ of Section 35, Township 22 North, Range 15 West. Containing 12½ acres more or less. |
| **Trustee's Exhibit 5**<br>General Warranty Deed<br>dated 8/8/96 | Lot 7, BRANSON EAST APARTMENTS, INC. a Subdivision as per the recorded plat thereof Plat Book C, page 652 of the Taney County Recorder's Office.<br>and<br>Lot 6, BRANSON EAST APARTMENTS, INC. a Subdivision as per the recorded plat thereof Plat Book C, page 652 of the Taney County Recorder's Office. |
| **Trustee's Exhibit 6**<br>General Warranty Deed<br>dated 8/8/96 | All of Lot 5, Block 7, Valley View Beach Subdivision, per the recorded plat thereof, Stone County, Missouri. Subject to easements and restrictions of record, if any.<br>and<br>Lots 13, 14 and 15, in Block 10, in CONEY ISLAND, a subdivision in the West Half of Section 23, Township 22, Range 23, as per the recorded plat thereof. Subject to covenants, conditions, restrictions, reservations and easements of record.<br>and<br>A part of the NW¼ of Section 26, Township 23, Range 23, described as follows: Beginning at a point on the South line of the NW¼, said point being South 89˜50' West 1238.58 feet from the Southeast corner thereof; thence South 89˜50' West along South line 338.84 feet to the East line of ROLLIN' ACRES, First Addition; thence North 26˜08' 53" East with said East line 593.02 feet; thence North 14˜01' 06" West to center of an existing road; thence South 87˜11' 44" East 254.10 feet with said c/l; thence North 56˜09' 06" East with said c/l 43.03 feet; thence North 31˜56' 34" East with said c/l 340.30 feet; thence South 30˜31' 31" East departing said c/l 484.37 feet; thence South 6˜16' West 245.0 feet; thence South 41˜23' West 249.71 feet; thence South 24˜59' West 300 feet; thence South 46˜51' |

21″ West 275.00 feet to the point of beginning, containing 13.4 acres, more or less.
and

All of the N½ of the NE¼ of Section 26, Township 23, Range 23 lying east of DD Highway as now located.
EXCEPT: A part of the N½ of the NE¼ of Section 26, Township 23, Range 23, described as follows: Beginning at the SE corner of the NE¼ NE¼, Section 26; thence S 89⁻42′ W along the south line of said N½ NE¼, 1644.46 feet to the easterly right of way line of Missouri Highway "DD"; thence northeasterly along right of way 419.24; thence N 89⁻24′ E 540.00 feet; thence N 89⁻42′ E 893.56 feet to the east line of Section 26; thence S 1⁻47′ E along east line 374.48 feet to the point of beginning.
ALSO EXCEPT: A part of the N½ of the NE¼ of Section 26, Township 23, Range 23, described as follows: Beginning at a point on the west line of the NE¼ of the NE¼ of Section 26; said point being N 0⁻51′ W 374.48 feet from the southwest corner thereof, thence S 89⁻24′ W 141.38 feet to the easterly right of way line of Missouri Highway "DD" thence northwesterly along said right of way line 716.36 feet, thence N 89⁻24′ E 995.11 feet, thence S 0⁻51′ E, 536.97 feet, thence S 89⁻24′ W 398.62 feet to the point of beginning.
Together with a road easement over the following described property; a part of the N½ of the NE¼ of Section 26, Township 23, Range 23, described as follows: Beginning at a point on the west line of the NE¼ of the NE¼ of Section 26, said point being N 0⁻51′ W 374.48 feet from the southwest corner thereof; thence S 89⁻24′ W 141.38 feet to the easterly right of way line of Missouri Highway "DD"; thence northwesterly along said right of way line 716.36 feet for a new point of beginning; thence N 89⁻24′ W parallel to the north line of said tract to the easterly right of way line of Highway "DD" thence northwesterly to the point of beginning.
Subject to easements and restrictions of record, if any.

**Trustee's Exhibit 7**
Warranty Deed
dated 6/23/98

The Southeast Quarter of the Northeast Quarter (SW/4NE/4) of Section Thirteen (13), Township Twenty-six (26) South, Range Nine (9) West, N.M.P.M., Luna County, New Mexico, containing 40 acre more or less. Excepting and reserving therefrom the South Thirty (30) Feet for public road purposes.