2002 WY 110

Nancy LURIE, Appellant
(Intervenor/Third Party
Claimant),

v.

Robert J. BLACKWELL, in his capacity as Liquidating Trustee of the Popkin & Stern Liquidating Trust, Appellee (Plaintiff).

No. 01–212.

Supreme Court of Wyoming.

July 18, 2002.

Stephen L. Simonton of Simonton and Simonton, Cody, WY, Representing Appellant.

Colin M. Simpson of Simpson, Kepler & Edwards, LLC, the Cody, Wyoming Division of Burg, Simpson, Eldredge, Hersch and Jardine, P.C., Cody, WY, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In 1978, Ronald U. Lurie and Nancy Lurie, husband and wife, of St. Louis, Missouri, purchased a bronze sculpture from a Missouri art dealer. At some point, the Luries sent the sculpture to a Cody, Wyoming, studio "to be sold," and the Luries later moved to Montana. In 2001, Robert Blackwell, a Missouri bankruptcy trustee, sought to execute his Missouri bankruptcy judgment against the sculpture in Wyoming, the judgment having been entered only against Ronald U. Lurie. Nancy Lurie sought to quash

* Chief Justice at time of expedited conference.

the execution, claiming that title to the sculpture was held as a tenancy by the entirety and therefore exempt from execution to satisfy a judgment entered solely against her husband. The district court ruled in favor of Robert Blackwell. We reverse.

## ISSUES

[¶ 2] Nancy Lurie, as appellant, phrases the issues as follows:

1. Does Wyoming prohibit tenancies-by-the-entirety for the kinds of tangible personal property which may be owned without recorded documents of title?

2. If there is a conflict between Wyoming and Missouri law on the recognition of tenancies by the entirety, should not Wyoming continue to follow the principle that the owners' interest is determined by the law of the state of the owner's domicile at the time the property was acquired, absent contrary dealings in the property in this state by the owners?

3. If not, does the third party non-debtor owner have standing to object to improper issuance of a writ of execution?

Robert Blackwell, as appellee, essentially frames his arguments in the context of the issues raised by Nancy Lurie.

## FACTS

[¶ 3] Ronald U. Lurie and Nancy Lurie are husband and wife, and were so in 1978. In September 1978, a St. Louis, Missouri, art dealer sold the Luries "Lack of Slack," a bronze sculpture by Harry Jackson, for $6,500.00. The seller's affidavit states that he sold the sculpture to "Ron and Nancy Lurie," and an accompanying bill of sale refers to the buyers as "Mr. & Mrs. Ron Lurie" with a St. Louis, Missouri, address. There is some indication from the information and addresses contained in the record that the Luries later moved to Montana, where they presently reside. In 1994, the Luries sent the sculpture to the Harry Jackson Studio in Cody, Wyoming, "to have it sold," and the record does not indicate any intent by the Luries for the sculpture to remain in Wyoming on a more permanent

basis. Nancy Lurie states that she has not "conveyed, waived or otherwise conceded her ownership interest in the [sculpture], nor has there been any agreement conveying, waiving or terminating the ownership in tenancy by the entirety."

[¶ 4] In April 1995, a judgment was recorded in the Fifth Judicial District Court of Park County, Wyoming. The judgment, arising from a Missouri bankruptcy proceeding, had been entered in favor of Robert Blackwell, the bankruptcy trustee, against Ronald U. Lurie for $1,121,743.00, plus interest. On March 22, 2001, a Writ of Execution issued from the Wyoming district court, and the Park County Sheriff's office subsequently seized the "Lack of Slack" sculpture at the Harry Jackson Studio in Cody. As of May 14, 2001, the referenced judgment remained unsatisfied in the amount of $745,275.78, which judgment continues to accrue interest.

[¶ 5] Nancy Lurie petitioned to intervene as a third-party claimant and quash the Writ of Execution, essentially arguing that Robert Blackwell could not execute the judgment against the sculpture in Wyoming because Nancy Lurie and Ronald U. Lurie held title to the sculpture as tenants by the entirety. She also attacked the finality of the recorded judgment. Robert Blackwell countered that Nancy Lurie had no standing to attack the sufficiency of the recorded judgment, that the Luries were now residents of Montana, which does not recognize tenancies by the entirety, and that in the alternative, the record is insufficient to overcome Wyoming law's presumption against tenancies by the entirety. Neither party asserts that the conveyance at issue in this case implicates the Uniform Commercial Code.

[¶ 6] After a hearing on Nancy Lurie's petition, the district court found that (1) Nancy Lurie did not have standing to question the sufficiency of the recorded judgment; (2) Montana does not recognize tenancies by the entirety; (3) had the original transaction occurred in Wyoming, the Luries "would not be able to qualify their purchase of this property as a tenancy by the entireties;" and (4) pursuant to the Restatement (Second) of Conflict of Laws § 259, the interests of a third-party creditor in marital per-

sonal property are determined using the law of the state where the personal property was located "when the interest is claimed to have been acquired," and Wyoming law applies because the sculpture was in Wyoming at the time the judgment was obtained and when the instant action was commenced. The district court concluded:

> To grant [Nancy Lurie's] petition would be to give greater protection than Wyoming residents enjoy to a non-resident who bought property in another state and who cannot obtain this protection under the laws of the state where she now resides. I am not persuaded that such a result would be in the interests of the State of Wyoming.

Nancy Lurie requested that the district court reconsider its ruling in light of further information regarding the referenced Restatement section. The district court denied this request, and Nancy Lurie filed a timely appeal from the order denying her verified petition to quash the Writ of Execution.

## STANDARD OF REVIEW

■ [¶ 7] The facts contained in the record are essentially undisputed; this appeal presents an issue of law which we review *de novo*, without affording deference to the district court's decision. *Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001); *Board of County Com'rs of County of Platte v. State ex rel. Yeadon*, 971 P.2d 129, 131 (Wyo.1998).

## DISCUSSION

■ [¶ 8] Given the particular circumstances of this case, wherein it is undisputed that the sale of the "Lack of Slack" sculpture occurred in Missouri (the record does not indicate that the sculpture was located any-

where but Missouri at the time the Luries acquired an interest in it) and that the Luries were domiciled in Missouri at the time they purchased the sculpture, we look to Missouri law to determine the effect of the conveyance of an interest in the sculpture to the Luries. Succinctly stated, the "nature of interests conveyed" in personal property is frequently "determined by the law of the state where the chattel is situated at the time of the conveyance," and "title to personal property acquired under the law of one state where the chattel is situated will be recognized in another state into which the chattel is taken." 16 Am.Jur.2d *Conflict of Laws* §§ 55, 56 (1998). *See, e.g., Pruitt Truck & Implement Co. v. Ferguson*, 216 Ark. 848, 227 S.W.2d 944, 945 (1950).

[¶ 9] Although we need not expressly adopt the applicable Restatement sections, we note that this approach appears to be consistent with the Restatement (Second) of Conflict of Laws §§ 244, 247 (1971), which sections provide:

> § 244. Validity and Effect of Conveyance of Interest in Chattel
>
> (1) The validity and effect of a conveyance of an interest in a chattel as between the parties to the conveyance are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the conveyance under the principles stated in § 6.[1]
>
> (2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel, or group of chattels, *at the time of the conveyance* than to any other contact in determining the state of the applicable law.

---

1. § 6. Choice–of–Law Principles

    (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

    (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

      (a) the needs of the interstate and international systems,

      (b) the relevant policies of the forum,

      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

      (d) the protection of justified expectations,

      (e) the basic policies underlying the particular field of law,

      (f) certainty, predictability and uniformity of result, and

      (g) ease in the determination and application of the law to be applied.

    Restatement (Second) of Conflict of Laws, *supra*, § 6.

§ 247. Moving Chattel into Another State: Effect on Title

Interests in a chattel are not affected by the mere removal of the chattel to another state. Such interests, however, may be affected by dealings with the chattel in the other state.

(Emphasis added.) Indeed, Restatement (Second) of Conflict of Laws, *supra*, § 247 cmt. a states:

a. *Rationale.* Commercial convenience and the needs of international and interstate relations alike require that interests in a chattel should not be affected simply by its removal from one state to another. An interest having once been acquired by the local law of the state where the chattel was at the time the interest was acquired will be recognized by a state into which the chattel is subsequently taken. This is so even though no such interest would have been acquired in the latter state if the chattel had been there at the time of the conveyance or other transaction. Conversely, no interest is acquired in a chattel upon its removal to a second state merely because such an interest would have arisen under the local law of the second state if a particular transaction which occurred prior to the chattel's removal to the state had taken place after the chattel had been removed there.

Illustration:

1. A conveys to B a chattel which is at the time in state X. A and B are both domiciled in X and X is the state of the applicable law under the rule of § 244. By the local law of X, B became absolute owner of the chattel. B subsequently takes the chattel to state Y under whose local law the conveyance would have given B only a security interest in the chattel.

The mere removal of the chattel to Y does not affect B's interest in the chattel.[2]

[¶ 10] This Court has looked to another state's law in evaluating the effect of a conveyance (or lack thereof) of personal property between the parties to that conveyance in relation to a third party's claimed interest in the property, although in a slightly different context. For example, in *Studebaker Bros. Co. of Utah v. Mau*, 13 Wyo. 358, 80 P. 151, 152–53 (1905), the seller, a Utah corporation, entered into a conditional sales contract in Utah for the sale of personal property situate in Utah to the buyers, also residents of Utah, wherein title to the personal property remained in the seller until the buyer paid for the property. At some point, one of the buyers (without the seller's consent) removed the personal property to Wyoming, where he sold it to another individual. *Id.* at 152. Utah law provided that conditional sales contracts were valid between the parties and as to subsequent bona fide purchasers without first having to be recorded. *Id.* at 154. Wyoming law provided that conditional sales were invalid as against subsequent bona fide purchasers without notice, unless the contract was recorded in the county where the property was situated. *Id.* In recognizing the interest of the Utah corporation in the personal property as against the third-party purchaser, this Court stated that "the validity and effect of contracts relating to personal property are to be determined by the laws of the state or country where they are made, and, as a matter of comity, they will, if valid there, be enforced in another state or country, although not executed or recorded according to the laws of the latter;" in other words, that

where, as in this case, a conditional sale of personal property is made in one state

---

2. To the extent it might also apply, this approach is consistent with Restatement (Second) of Conflict of Laws, *supra*, § 259, which section provides:

§ 259. Removal of Movables of Spouses to Another State

A marital property interest in a chattel, or right embodied in a document, which has been acquired by either or both of the spouses, is not affected by the mere removal of the chattel or document to a second state, whether or not this removal is accompanied by a change of

domicil to the other state on the part of one or both of the spouses. The interest, however, may be affected by dealings with the chattel or document in the second state.

"[M]arital property" is defined as "any interest which one spouse acquires, solely by reason of the marital relation, in the immovables and movables of the other spouse, apart from the expectancy of inheriting upon the death of the other." Restatement (Second) of Conflict of Laws, *supra*, § 257, Introductory Note at 108.

between parties residing in that state, and where the property is then situated and delivered, and without any agreement or intention that the property is to be removed to another state, and such contract is valid, although not filed or recorded, in the state where made, against bona fide purchasers from the conditional vendee, and the conditional vendee, without the knowledge or consent of the vendor, removes the property to another state, and there sells it to a bona fide purchaser, such purchaser acquires only such rights in the property as the conditional vendee had therein; and that the conditional vendor can recover the property from such purchaser notwithstanding the fact that the conditional sale would have been invalid for want of filing or record under the laws of the state to which the property was removed and where it was sought to be recovered.

*Id.* at 154. On rehearing, this Court found that recognizing the valid interest created in Utah would not be contrary to Wyoming law or policy, stating also that

"[a]pplying by analogy the principles that have been applied to chattel mortgages, it would seem that the validity and effect of the reservation of title in the contract of sale of personal property should be determined by the lex loci contractus, rather than the lex situs, not only when the question arises between the immediate parties, but also when it arises between the vendor and a subsequent purchaser from or creditors of the vendee, so far as the rights of such purchaser or creditor depend upon the original validity and effect of the reservation itself. But, however that may be, it is clear that, when the contract is made in the state in which the property is then located, the question as to the original validity and effect of the reservation is to be determined by the law of that state, notwithstanding the subsequent removal of the property to another state."

*Studebaker Bros. Co. of Utah v. Mau,* 14 Wyo. 68, 82 P. 2, 5 (1905) (*quoting* Wharton on the Conflict of Laws § 355(b)).

[¶ 11] Robert Blackwell essentially argues that the principles stated in Restatement (Second) of Conflict of Laws, *supra,* § 247 and 16 Am.Jur.2d *Conflict of Laws, supra,* § 56, are inapplicable because the Luries are no longer domiciled in Missouri, and the substantive law of Montana (the Luries' current domicile) or Wyoming (where the sculpture is located and the bankruptcy judgment is recorded) should be utilized to determine a third-party judgment creditor's rights regarding the sculpture. But Robert Blackwell's right to execute his judgment against the sculpture in Wyoming necessarily depends on the effect of the conveyance of the sculpture to the Luries. We evaluate the effect of that conveyance according to the circumstances existing at the time of the conveyance. At that time, the Luries and the seller were domiciled in Missouri, and the sculpture was apparently situate in Missouri. Aside from Robert Blackwell recording the Missouri judgment in Wyoming and attempting to execute that judgment against the sculpture, the record does not reveal any additional dealings or transactions in Wyoming that might affect whatever interest the Luries originally acquired in the sculpture. That the Luries may have later moved to Montana is not sufficient, itself, to affect the Luries' original interest in the sculpture. Recognizing that the instant case lends itself to numerous potential factual variations, which variations might implicate a different legal result, we limit the application of our holding to the context, and facts, before us.

[¶ 12] It is undisputed that the Luries were married at the time they acquired an interest in the sculpture. According to Missouri law, where "two persons who are husband and wife become joint owners of personal property a presumption arises that they hold the property as tenants by the entirety. The presumption is that each spouse owns an undivided interest in the whole of the property." *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 213 (Mo.App.1979); *see also Seabaugh v. Seabaugh,* 839 S.W.2d 49, 50 (Mo.App.1992); *Nelson v. Hotchkiss,* 601 S.W.2d 14, 18 (Mo.1980); and *In re Stanke,*

234 B.R. 439, 441 (Bankr.W.D.Mo.1999).[3] Robert Blackwell does not direct us to any facts sufficient to rebut such a presumption, and the district court found that the Luries "acquired ownership of the personal property in Missouri as tenants by the entireties."

■ [¶ 13] Accordingly, Robert Blackwell cannot execute his judgment against the sculpture at this time. The bankruptcy judgment at issue was entered only against Ronald U. Lurie. Neither Wyoming nor Missouri law allows a judgment creditor to seize property held by a husband and wife as tenants by the entirety to satisfy the individual debts of one of the spouses. *Colorado Nat. Bank v. Miles*, 711 P.2d 390, 393–94 (Wyo.1985); *Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 591 S.W.2d at 214–15; *In re Stanke*, 234 B.R. at 442. It is undisputed that Nancy Lurie has not "conveyed, waived or otherwise conceded her ownership interest in the [sculpture], nor has there been any agreement conveying, waiving or terminating the ownership in tenancy by the entirety." In light of this finding, we need not address the parties' remaining issues, and we reverse the district court's decision.

---

3. Wyoming recognizes tenancies by the entirety in real or personal property. *Oatts v. Jorgenson,* 821 P.2d 108, 114 (Wyo.1991); *Choman v. Epperley,* 592 P.2d 714, 715–19 (Wyo.1979); *National Bank of Newcastle v. Wartell,* 580 P.2d 1142, 1144 (Wyo.1978); Wyo. Stat. Ann. § 34–1–140 (LexisNexis 2001). However, joint tenancies and/or tenancies by the entirety are disfavored in Wyoming. *Oatts,* 821 P.2d at 114. In *Oatts,* the personal property at issue was a treasury bill registered to a decedent, his wife, and his daughter. *Id.* at 109. We stated that absent an express, "clear manifestation" of the intention to create a joint tenancy interest on the "face of the instrument," a tenancy in common will be presumed. *Id.* at 114.

Montana apparently does not recognize tenancies by the entirety and its legislature has codified a rule that if " 'there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner and is governed by the law of his domicile.' " *Lurie v. Sheriff of Gallatin County,* 299 Mont. 283, 2000 MT 103, ¶ 13, 999 P.2d 342, 345 (2000) (*quoting* § 70–1–109, MCA). In *Lurie,* a case involving these same parties, the Montana Supreme Court held that because the Luries were domiciled in Montana and the personal property was also situate in Montana, "personal property owned by Appellant and her husband Ronald as tenancy by the entirety in Missouri may not be held in that manner in Montana," and such property was subject to execution in Montana. *Lurie,* 2000 MT 103, ¶ 15, 999 P.2d at 346.