## STUDEBAKER BROTHERS COMPANY v. MAU.

CONDITIONAL SALES—CONFLICT OF LAWS—JUDICIAL CONSTRUCTION OF CONTRACTS MADE IN ANOTHER STATE—APPLICATION OF RECORDING STATUTES TO CONDITIONAL SALE CONTRACTS MADE IN ANOTHER STATE—CONSTITUTIONAL LAW.

1. Where the validity of a contract made and to be performed in a foreign jurisdiction is to be determined upon the law of such jurisdiction, there is no distinction between a contract depending for its validity upon a statutory enactment and one whose validity depends upon a judicial construction of the courts of such jurisdiction, since both statutory enactments and judicial construction have equal force and effect at home, and the construction there given determines the standing of the contract elsewhere.

2. In determining the validity in another state of a contract of conditional sale made and to be performed there, it is immaterial whether the custom prevailing in that state, that conditional bills of sale need not be recorded in order to be valid against subsequent purchasers in good faith, is a statutory enactment or the result of judicial construction.

3. In a suit by the vendor in a conditional sale made and to be performed in another state to recover the personal property from one who purchased it in this state from the conditional vendee, where the plaintiff's right is contested on the ground that the contract was not recorded as required by the laws of this state, the requirement of registration, and the manner of the making and solemnization of a contract in the other state, relative to personal property located there at the time of making such contract, will not be inquired into further than to determine whether, under the laws of such other state, the contract is valid.

4. Though a contract valid where made is valid everywhere, it does not necessarily follow that it is enforcible everywhere. The question of its enforcement depends upon the law of the forum where the action for its enforcement is pending.

5. Comity will not intervene to enforce the laws of a foreign state or country, if such enforcement would contravene the well settled policy of the forum, or be prejudicial to the interests of its citizens, or when it comes in conflict with a positive law.

6. Comity will only be adopted in the silence of a particular rule affirming, denying or restraining the operation of foreign laws.

7. Comity rests upon a broader principle than that of mere accommodation or courtesy; upon it rests to a large extent the right of property. The right of one to enforce a contract, valid where made, and to protect and reclaim his property wherever found, is founded upon principles as broad as the domain of justice itself.

8. While the courts will enforce a positive law, and protect the settled policy, of their own jurisdiction, they will likewise jealously guard the property and rights of the citizens of neighboring jurisdictions, while under their protection.

9. Where the statute of a state is broad enough in its provisions to require the filing or recording of conditional sale contracts, though made in another state concerning property located there, to be valid as against innocent purchasers, such contract could not be enforced in the former state against an innocent purchaser under the doctrine of comity, since to enforce it under such circumstances would permit the doctrine of comity to contravene positive statutory provisions.

10. The statutory provision that conditional sale contracts to be valid against innocent purchasers shall be "filed in the office of the County Clerk of the county wherein the property is," means the county where the property is at the time of the execution of the contract; and such provision does not apply to a contract made and to be performed in another state covering property located there at the time of the contract, and where the removal of the property from such state was not contemplated, though the property is afterwards moved to this state without the vendor's consent and sold to an innocent purchaser.

11. Where a contract of conditional sale is made in the state where the property is then located, the question as to the original validity and effect of the reservation of title is to be determined by the law of that state, notwithstanding the subsequent removal of the property to another state; and unless the law of the latter state with reference to recording contracts of conditional sales expressly or by clear implication applies to contracts made out of the state with reference to property subsequently brought into the state, it will

not be necessary to file or record the contract in that state, unless it was contemplated at the time of the sale that the property should be removed to such state.    .

12. The constitutional provision that no person shall be deprived of his property without due process of law is not contravened by permitting a vendor in a conditional sale to recover the property from one who may have purchased it from the vendee in good faith and without notice of the vendor's rights, since the recovery in such case is permitted upon the principle that the purchaser acquired no title to the property.

[Decided August 28, 1905.]                    (82 Pac., 2.)

On petition for rehearing.

For former opinion, see 13 Wyo., 358 (80 Pac., 151).

S. T. Corn and J. H. Ryckman, for defendant in error (in support of petition for rehearing).

The cases cited by the learned author of Mechem on Sales, in support of the proposition that conditional sale contracts should be determined by the laws of the state or country where they are made, and if valid there will be enforced in any other state or country, although not filed or recorded in the latter jurisdiction, are not distinguished in that work; several important points we think are overlooked in the citation of such authorities. Most of them are to be distinguished from the case at bar and the points here involved. (Counsel then proceeded to review the various authorities referred to, to demonstrate their inapplicability to the case at bar.)

The rule is well settled that the laws of a foreign country or state will not be enforced where it will contravene the settled policy of the forum, or be prejudicial to the interests of its citizens, or where the contract is immoral, or injurious, or the enforcement will work a detriment to a single citizen of the state of the forum. (Freeman's App., 68 Conn., 533; Thurston v. Rosenfield, 42 Mo., 474; Bryan v. Brisbin, 26 Mo., 423; Emory v. Greenough, 3 Dall., 370; Andrews v. Heriott, 4 Cow., 510; Zipcuy v. Thompson, 1

Gray, 243; Gardner v. Lewis, 7 Gill., 395; Story's Conflict L., Secs. 28, 571, 572; Willetts v. Waite, 25 N. Y., 577; Ducat v. Chicago, 95 A. D., 529; Smith v. McAtee, 27 Md., 420; Bouvier L. Dict. Comity; Derringer v. Derringer, 5 Houston, 416; Gillman v. Kitchan, 84 Wis., 60; Catlin v. Wilcox, 123 Ind., 477; Runk v. St. John, 29 Barb., 585; Mineral Point Co. v. Barron, 83 Ill., 365; Woodward v. Brooks, 128 Ill., 222; Davis v. Jocquin, 5 Har. and J., 109; Wilson v. Carson, 12 Md., 75; Midland Co. v. Broat, 50 Minn., 562; Noles v. Vacher, 57 N. J. L., 490; Varnum v. Camp, 13 N. J. L., 362; Sandhein v. Gilbert, 117 Ind., 71.)

Comity is voluntary and not obligatory and cannot supersede discretion. (Gooch v. Fausette, 39 L. R. A., 836.) A contract valid where made is valid everywhere, but it is not necessarily enforcible everywhere; it may be contrary to the law of the forum, or may be inconvenient, or prejudicial to the citizens thereof, in which event it will not be enforced. (Emery v. Burbank, 28 L. R. A., 57; Hoyt v. Thompson, 19 N. Y., 207.) In case of doubt the *lex fori* should be preferred. (22 Ency. L., 1320.) The vendor in the case at bar could have provided for the contingency of the property being taken out of the state, so that such removal would have been tortious, and upon that ground could have prevented the vendee from conveying any title to another. But one case exactly in point with the case at bar seems to have been referred to in the latest discussion of this question, viz, in Wharton on the Conflict of Laws. (Sanger v. Piano Co., 21 Tex. Civ. App., 523.) That case is against the contention of the appellant in the case at bar and was decided upon the principle that comity will not be exercised when in conflict with or in derogation of the law or policy of the forum, and when detrimental, injurious or inconvenient to any of its citizens. To sustain the contention of the plaintiff in error in the case at bar would violate the principle that where one of two innocent parties must suffer from the conduct of a third, the loss should be borne by the one who put it in the power of such third person to commit the injury. (*Ex parte*

Dickinson, 13 Am. St., 752; Pierce v. O'Brien, 129 Mass., 314; Payne v. Lester, 44 Conn., 196; Moore v. Church, 70 Ia., 208.) And it would create great uncertainty as to titles to personal property. (Schmaltz v. Mfg. Co., 204 Pa. St., 1.)

VAN ORSDEL, JUSTICE.

This case was decided at the last term of this court (80 Pac., 151). A petition for rehearing was filed within time and the cause was reargued and briefs submitted in support of the petition. For a statement of the case reference is made to the original opinion. The grounds assigned in the petition for rehearing, upon which it is claimed the court erred in its former decision, briefly summarized, are as follows: That the doctrine of comity does not apply in this case, for the reason that the contract in question, being a conditional bill of sale and not recorded in Utah, the *lex fori* and not the *lex loci contractus* governs; that the law of Utah is in conflict with a positive law of this state, and the decision therefore unjustly discriminates against the citizens of Wyoming in favor of the citizens of a foreign jurisdiction, in that a positive statute of this state is rendered inoperative, as against a mere judicial construction of the State of Utah, which construction is in conflict with the established policy of this state which is intended to protect *bona fide* purchasers of chattels against secret liens and pocket encumbrances; and that the decision deprives the defendant of his property without due process of law, and contravenes the provisions of both the state and federal constitutions.

It is well to understand at the outset that it is not the contract between Mahan, the original vendee, and the defendant, Mau, that we are considering. This action stands or falls upon the right of plaintiff to enforce its contract in this state. If it fails, there is no question as to the right of the defendant to the property. If it succeeds, the contract between the original vendee and the defendant becomes a mere nullity. It is conceded that the contract of conditional sale, upon which plaintiff relies, is valid under the law as

established by judicial construction in the State of Utah. In determining the validity of a contract made and to be performed in a foreign jurisdiction, we fail to discern any distinction between a contract depending for its validity upon a statutory enactment, and one the validity of which depends upon a judicial construction of the courts of such jurisdiction. Both have equal force and effect at home, and the construction there given determines their standing abroad. Hence, for the purposes of this case, it is immaterial whether the custom prevailing in Utah, that does not require conditional bills of sale to be recorded, in order to be valid against subsequent purchasers, in good faith, is a statutory enactment or the result of judicial construction. The requirement of registration and the manner of the making and solemnization of a contract in another state or country, relative to personal property located there at the time of the making of such contract, is not a question into which we can inquire, further than to determine whether or not under the laws of the particular jurisdiction the contract is valid. The contract in question, being valid where the property was located when the contract was made, where the parties all resided at the time of its execution, and where it was to be performed, it is immaterial so far as this inquiry is concerned whether the law of Utah requires such contract to be registered or not. In other words, if our registration law requires foreign conditional bills of sale to be filed in this state, when the property is removed here from such foreign jurisdiction, the condition will not be different whether the state or country where such bill of sale was executed and from which the property was removed requires the instrument to be recorded or not. While it is true that a contract valid where made is valid everywhere, it does not necessarily follow that it is enforceable everywhere. The question of its enforcement depends upon the law of the forum where the action for its enforcement is pending, and does not depend upon the particular method adopted to insure its validity in the jurisdiction where made.

Section 2837, Revised Statutes, among other things, provides: "No sale, contract or lease wherein the transfer or title of ownership of personal property is made to depend upon any condition, shall be valid against any purchaser or judgment creditor of the vendee or lessee in possession, without notice, unless the same be in writing, signed by the vendee or lessee, and the original or a copy thereof filed in the office of the County Clerk of the county wherein the property is." Plaintiff failed to record its contract of conditional sale, under this statute, after the property in question was brought into this state. It is contended by counsel for defendant that such failure is fatal, and that plaintiff cannot now recover the property, after it has passed into the hands of the defendant, an innocent purchaser. It is evident that if plaintiff can recover its property it must be through the intervention of the doctrine of comity. Comity will not intervene to enforce the laws of a foreign state or country, if such enforcement would contravene the well settled policy of the forum, or be prejudicial to the interests of its citizens, or when it comes in conflict with a positive law. Comity will only be adopted by courts of justice in the silence of a particular rule affirming, denying or restraining the operation of foreign laws. While comity is voluntary and not obligatory, and cannot supersede discretion, yet it rests upon a much broader principle than that of mere accommodation or courtesy. It may be said almost to be a part of the international law of civilized nations. Upon it rests to a large extent the right of property. The security of this right can only be guaranteed through the sacredness of the contractual relation. The right of a citizen to enforce his contract, valid where made, and to protect and reclaim his property wherever found, is founded upon principles as broad as the domain of justice itself. The protection afforded to property rights through the comity of states and nations is essential to the security of inter-state and inter-national commercial transactions. Hence, while the courts will enforce a positive law and

protect the settled policy of their own jurisdiction, they will likewise jealously guard the property and rights of the citizens of neighboring jurisdictions, while under their protection. If our statute is broad enough in its provisions to require the plaintiff to record the conditional bill of sale in question, when the property was removed into this state, then to attempt to enforce this contract, in the absence of such registration, would be to permit the doctrine of comity to contravene the provisions of a positive statute. In such a conflict the law of the forum must prevail, and the *lex fori* and not the *lex loci contractus* must govern; but in the absence of such a conflict comity will control and the *lex loci contractus* will govern. We are of the opinion that the contract in question, valid in Utah where made and to be performed against *bona fide* purchasers and encumbrancers, is likewise valid here, and does not conflict either with a positive law or the established policy of this state.

The statute provides that contracts of conditional sale shall be "filed in the office of the County Clerk of the county wherein the property is." This can only mean where the property is at the time of the execution of the contract. How could plaintiff have filed the contract in question with the clerk of Uinta County at the time of its execution? The property was located in Utah, the parties all resided there, the contract was executed and to be performed there, and as conceded it was not contemplated that the property should be removed from that state. The statute will not bear any such liberal construction, nor do we think it was the legislative intent that it should. Statutes similar to the one under consideration are generally held not to have any extra territorial force or effect. The Legislature has power to enact a law requiring that instruments such as the one under consideration, affecting property brought into the state from a foreign jurisdiction, shall be recorded within a reasonable time, and such a statute would be due notice to contracting parties everywhere, but our present registration law has no such effect. The wisdom of such legislation

is a matter entirely with the legislative department of the government and not with us. Our duty is to construe the law as we find it. Under such a statute, contracting parties everywhere would be bound to take notice and protect themselves accordingly; but until we have such a law, citizens of other states and countries have a right to expect the same treatment here as is accorded, under similar circumstances, by sister states, and in fact by all civilized nations.

It has been generally held by the great weight of authority, and we think upon just and sound principles, that where a mortgagee of personal property removes the mortgaged property into another state without the knowledge or consent of the mortgagor, and the mortgage constitutes a valid lien in the jurisdiction where the property was at the time of the execution and filing of the mortgage, the mortgagor or his legal representative may follow the property into the jurisdiction where removed, and without complying with the registration laws of such jurisdiction, enforce his lien against subsequent *bona fide* purchasers or encumbrancers. The rule, however, as to conditional bills of sale is, in our judgment, even more sweeping. In the case of mortgaged property the title to the property has passed, and the mortgagee has a certain right of title that does not exist in the case of a vendee under a conditional bill of sale. There the title remains absolutely in the vendor, and any attempt to dispose of the property, without the knowledge or consent of the vendor, is tortious.

The above conclusions are supported by ample authority. Wharton in his latest edition on the Conflict of Laws (Sec. 255b) announces the following rule, and cites a large number of leading decisions in support thereof: "Applying, by analogy, the principles that have been applied to chattel mortgages, it would seem that the validity and effect of the reservation of title in the contract of sale of personal property should be determined by the *lex loci contractus,* rather than the *lex situs,* not only when the question arises be-

tween the immediate parties, but also when it arises between the vendor, and a subsequent purchaser from, or
creditors of, the vendee, so far as the rights of such purchaser or creditor depend upon the original validity and
effect of the reservation itself. But, however that may be,
it is clear that, when the contract is made in the state in
which the property is then located, the question as to the
original validity and effect of the reservation is to be determined by the law of that state, notwithstanding the subsequent removal of the property to another state. Assuming, however, the original validity of the reservation by the
law of the place where the contract was made and where the
property was then situated, the question arises whether,
upon the removal of the property to another state, it is
necessary to file or record the contract, or take the other
steps required by the local law of the latter state, in order
to protect the vendor against subsequent purchasers from,
or creditors of, the vendee. The weight of authority holds,
in accordance with the rules relating to chattel mortgages,
that, unless the local law of the latter state with reference
to filing or recording conditional contracts of sale expressly,
or by clear implication, applies to contracts made out of. the
state with reference to property subsequently brought into
the state, it is not necessary to file or record the mortgage
in that state, unless it was contemplated at the time of the
sale that the property should be removed to such state, in
which case filing or recording seems to be necessary, notwithstanding that the contract of sale was completed in
another state." This, we think, is a comprehensive and
concise statement of the law applicable to this case.

A number of cases have been cited in brief of counsel
for defendant, in support of their contention, which are not
in point. It may be stated before considering these cases,
that had the plaintiff sold the buggy in question with the
understanding that it was to be brought into this state, or
had consigned it to a vendee residing in this state, though
the contract was made in Utah, or the contract had been

made between residents of Utah relative to property located in this state, the rule might be different. But in the case at bar the parties to the contract were residents of Utah, the property was located there, and it was not contemplated that it should be removed from that state. Contrary to the express stipulation of the contract that the vendee should not sell or dispose of the property, except upon the written order of the vendor, vendee, without the knowledge or consent of the vendor, brought the property into this state and sold it to the defendant. A brief review of the cases cited by counsel for defendant discloses that the facts in those cases are very different from those of the case at bar. In Guillander v. Howell, 35 N. Y. Rep., 657, a citizen of New York, owning personal property in New Jersey, made an assignment with preference to creditors, which was valid in New York, but void in New Jersey. Certain creditors in New Jersey seized the property there under her foreign attachment laws and sold it, and the Court of Appeals recognized the validity of the attachment proceedings, and disregarded the sale in New York. The case of Green v. Van Buskirk, 5 Wall., 312, and 7 Wall., 139, is exactly similar, except that the parties to the contract and the attaching creditor were all citizens of New York, while the property was located in Illinois. In Keller et al. v. Payne, 107 N. Y., 83, the property was located in New York state and the mortgagor, mortgagee and attaching creditors were all residents of Pennsylvania. The same rule applied as in Green v. Van Buskirk. In Harvey v. Locomotive Co., 93 U. S., 664, the vendor, a Rhode Island company, delivered to the vendee, a railroad contractor in Illinois, a locomotive to be used in the latter state. No record was made in Illinois of the contract of sale and it was held void as against attaching creditors in that state. In Cunningham v. Cureton, 96 Ga., 489, the vendor, a Tennessee company, sold the vendee certain mill machinery to be used in Georgia. It was held that the conditional contract of sale not being recorded in Georgia, was void as against a subsequent

mortgagee in good faith. Thus it will be observed that in the cases cited either the vendor consented to the removal of the property to the foreign jurisdiction, or the property was so located at the time the contract was made. A different rule of law applies to such cases. The rule applicable is that, "If a person sends his property within a jurisdiction different from that where he resides, he impliedly submits to the rules and regulations enforced in the country where he places it." (Denny v. Bennett, 128 U. S., 489.) We have been cited to but one case that appears to sustain the contention of defendant. That is the case of Sanger v. Piano Co., 21 Tex. Civ. App., 523. There the vendor sold to the vendee a piano in Arkansas, under a conditional sale contract. The vendee, without the knowledge or consent of the vendor, removed the piano to Texas and sold it. No record of the contract was made, either in Arkansas or Texas. Conditional bills of sale, to be valid against subsequent *bona fide* purchasers or encumbrancers, are not required to be recorded in Arkansas, but are required to be recorded in Texas. The Texas court held that the contract, not being recorded there, was void against the subsequent purchaser. This case, so far as we have been able to discover, stands alone, and we think, if we correctly understand the principle upon which the decision was based, it is contrary to sound reason and the great weight of authority. The case of Lees v. Harding, Whitman & Co. (N. J.), 60 Atl., 352, decided in March of the present year, is in point by analogy at least with the case at bar. It was held in that case that a contract executed in Pennsylvania on chattels located there, construed as a bailment in that state and valid against subsequent *bona fide* purchasers, and encumbrancers, though not recorded, would be construed as a conditional bill of sale in New Jersey; and being valid where made and to be performed could be enforced for the recovery of the property in New Jersey against subsequent *bona fide* purchasers and encumbrancers, without record in that state, though the statutes of New Jersey, similar to

ours, require such contracts, when executed in that state upon property there located, to be recorded in order to be valid against *bona fide* purchasers and encumbrancers. The opinion in this case presents an exhaustive discussion of the law relative to contracts similar to the one here under consideration.

It is contended that to permit the *lex loci contractus* to govern, when the plaintiff failed to provide in the contract against the property being removed from Utah, and permitted the vendee to exercise absolute control and apparent ownership over it, opens a wide door of fraud to be perpetrated upon the citizens of this state. It is true that the contract contained no stipulation that the property should not be removed out of the State of Utah, hence the bringing of the property into this state was not tortious. But the contract did contain a stipulation that the vendee should not sell or dispose of the property except upon the written order of the plaintiff. While the mere bringing of the property into this state was not tortious, the sale of it was, and the vendee could convey to the defendant no greater title than he possessed, and possessing no title to the property, he conveyed none to the defendant. We are not impressed by the dark forebodings of counsel. It may in occasional instances operate to the injury of citizens of this state, but we are inclined to coincide with the views. announced in the case of Smith & Co. v. McLean, 24 Ia., 322, where the court said: "The argument based upon the hardships of this and similar cases fails to convince us, that justice and the interest of the people of this state require a modification of the rule, *lex loci contractus,* as contended for. That there may be instances of innocent persons sustaining loss, as did the defendant in this case, in its application to instruments executed in another state, may readily be admitted; but these occasional instances of hardship are amply counter-balanced by the benefits which the people of the state receive in the application of the rule in other states to contracts entered into here. We could

illy afford to establish a precedent, disregarding and setting aside, in our administration of justice, those rules of comity which have heretofore been recognized by all civilized nations. It might return upon us with most mischievous results."

It is further contended that by the former decision the defendant was deprived of his property without due process of law, and to that extent the decision contravened the provisions of both the state and federal constitutions. It is a sufficient answer to this objection to say that as the defendant never acquired any title to the property in question, as against the plaintiff, it is not clear to us how the enforcement of plaintiff's right to the property, with which he never parted title, can invade any of the constitutional rights of the defendant.          *Rehearing denied.*

Potter, C. J., and Beard, J., concur.