**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 27 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GERALD SHANE STUART, an
individual,

     Plaintiff - Appellant,

vs.

COLORADO INTERSTATE GAS
COMPANY, a Delaware corporation,

     Defendant - Appellee.

No. 01-8006

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 00-CV-131-D)**

---

Kent Wilson Spence, (J. Douglas McCalla and Larissa A. Ferullo, with him on the briefs), Spence, Moriarity & Schuster, L.L.C., Jackson, Wyoming, for Plaintiff - Appellant.

Steven G. Greenlee (and Kevin F. Amatuzio, with him on the brief), Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Denver, Colorado, for Defendant - Appellee.

---

Before **KELLY** and **MCKAY**, Circuit Judges and **BROWN**[*], District Judge.

---

**KELLY,** Circuit Judge.

---

[*]The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation.

Plaintiff-Appellant Gerald Shane Stuart appeals from the district court's dismissal of his negligence claim against Defendant-Appellee Colorado Interstate Gas Company (CIG). The district court's jurisdiction was based on 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Background

CIG, a Delaware corporation with its principal place of business in Colorado, owns property in Weld County, Colorado, used for the production and development of natural gas. CIG contracted with Northwinds of Wyoming, Inc. (Northwinds), a construction company based in Wyoming, to install pulsation bottles on natural gas pipelines at the Weld County Facility ("the Facility"). Although a Wyoming resident, Mr. Stuart went directly to the Facility in Colorado and sought employment. The Project Superintendent, a Northwinds employee, hired Mr. Stuart just for the work to be performed at the Facility in Colorado, but Northwinds issued Mr. Stuart's paychecks from its office in Wyoming. The contract with CIG required Northwinds to carry workers' compensation insurance for all of its employees. As part of this contractual requirement, Northwinds named CIG as an insured on its workers' compensation policy which covered all of its employees, including Mr. Stuart.

An explosion occurred at the Facility, resulting in second and third degree

burns to Mr. Stuart, as well as a broken hip and pelvis. After applying for and receiving workers' compensation benefits from Wyoming, Mr. Stuart filed this cause of action, alleging negligence and gross negligence on the part of CIG.

CIG responded with a motion to dismiss Mr. Stuart's claim under Fed. R. Civ. P. 12(b)(1), providing affidavits to support its argument that the court lacked subject matter jurisdiction to entertain Mr. Stuart's complaint. CIG argued that Colorado law applied in this case, under which CIG qualified as a statutory employer. Under Colorado law, the exclusive remedy against statutory employers is workers' compensation insurance. See Colo. Rev. Stat. §§ 8-41-102, 401 (2001). Mr. Stuart argued that Wyoming law applied under which there exists no exclusive workers' compensation remedy to a third party non-employer such as CIG. See Wyo. Stat. Ann. § 27-14-104(a) (Michie 2001). The district court granted CIG's motion, determining that Colorado law applied and, as a result, that CIG was immune from the common-law action brought by Mr. Stuart. Stuarte v. Colo. Interstate Gas Co., 130 F. Supp. 2d 1263 (D. Wyo. 2000).

Appropriateness of 12(b)(1) Dismissal and Standard of Review

The district court dismissed the case under Rule 12(b)(1), concluding that the immunity afforded CIG under the Colorado Workers' Compensation Act ("Colorado Act") removed the court's power to hear the case. Generally, a federal court has subject matter jurisdiction when the minimal requirements of

diversity are met, *viz.*, diversity of citizenship and a good faith claim for the requisite amount in controversy. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938). "The essence of diversity jurisdiction," however, " is that a federal court enforces State law and State policy." Angel v. Bullington, 330 U.S. 183, 191 (1947) (federal court sitting in diversity case could not grant deficiency judgment barred by North Carolina statute). Thus, there are cases where, even if diversity of citizenship exists, a federal court "will not take jurisdiction [ ] unless the plaintiff has asserted a claim cognizable in the state courts." 13B Charles Alan Wright et al., Federal Practice and Procedure § 3602, at 375 (2d ed. 1984); see also Proctor & Schwartz, Inc. v. Rollins, 634 F.2d 738, 740 (4th Cir. 1980) (finding that South Carolina "door-closing" statute deprived federal court of jurisdiction). In this case, both parties concede that if Colorado's exclusive remedy provision applies, Mr. Stuart has no cause of action. Aplt. Br. at 9; Aplee. Br. at 9. As such, the district court properly treated the issue as one falling under the province of a 12(b)(1) dismissal, rather than a dismissal for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6).

Rule 12(b)(1) motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. Holt v. United States, 46 F.3d 1000, 1002 (10th

- 4 -

Cir. 1995) (internal citation omitted).  In reviewing a facial attack, the district court must accept the allegations in the complaint as true.  Id.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based.  Id. at 1003.  CIG chose the second form of attack, offering affidavits in support of its factual attack to subject matter jurisdiction.  Stuarte, 130 F. Supp. 2d at 1265.  In reviewing a factual attack, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  Holt, 46 F.3d at 1003.  In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion.  Id.  We review de novo the district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and review findings of jurisdictional facts for clear error.  Id.

## Discussion

The primary issue in this case is the proper choice of applicable law.  A federal court sitting in diversity must apply the choice of law rules of the forum in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Although Mr. Stuart's cause of action is facially one sounding in tort, the fact that his injuries implicate the workers' compensation acts of two different states

changes the nature of the choice of law decision. We are thus presented with the problem of discerning if a Wyoming court would apply Wyoming law, Colorado law, or perhaps a combination of the two. See Garcia v. Am. Airlines, Inc., 12 F.3d 308, 310 (1st Cir. 1993) (stating that "more than one workers' compensation statute can apply to a single [ ] injury, so long as each state has a 'more-than-casual' interest in the case") (citing 4 Arthur Larson, Workmen's Compensation Law § 86.00, at 16-48 (1992)).

Extraterritorial Application of the Wyoming Act

The district court rested its decision that the Colorado Act applied in this case, and therefore its exclusive remedy provision, largely on its analysis of § 27-14-301 of the Wyoming Workers' Compensation Act (the "Wyoming Act"). See Stuarte, 130 F. Supp. 2d at 1267–68. Section 27-14-301, in pertinent part, provides:

> (a) [The Wyoming Act] applies to all injuries and deaths occurring in Wyoming . . . if the employment is principally localized in Wyoming and to all injuries and deaths occurring outside of Wyoming . . . under the following conditions:
> (i) The employment is principally localized in Wyoming
>
>  . . .
>
> (b) For purposes of this section, employment is principally localized where:
> (i) The employer has a principal place of business within the state established for legitimate business-related purposes; and
> (ii) The employee regularly works at or from that place of business.

Wyo. Stat. Ann. § 27-14-301 (Michie 2001). Finding that Mr. Stuart was hired in Colorado and worked only in that state, the district court concluded that Mr. Stuart's employment with Northwinds did not qualify as "principally localized." Stuarte, 130 F. Supp. 2d at 1267. As a result, the district court determined that any conflict between the Colorado Act and the Wyoming Act was "illusory," because § 27-14-301 "evince[d] a strong legislative presumption against extraterritoriality" as to the facts of this case. Id. Mr. Stuart challenges the district court's application of the facts of this case to the statute in question, while, of course, CIG asserts the district court properly interpreted the statute.

Although there may be a question as to whether the Wyoming Legislature intended § 27-14-301 to determine the applicability of the Wyoming Act to a non-employer such as CIG, see Wyo. Sess. Laws Ch. 177, § 1 (amending terminology of § 27-14-301 relating to nonresident employers), it does express clearly the extraterritorial reach of the Wyoming Act. The plain language of § 27-14-301 demonstrates that the Wyoming Act reaches those claims where either the parties effected the employment contract in Wyoming, see Wyo. Stat. Ann. §§ 27-14-301(a)(ii), (iii) (Michie 2001), or where the employment itself is "principally localized" in Wyoming. See id. § 27-14-301(a)(i). In this case, the parties effected the employment contract in Colorado, so the only question is whether Mr. Stuart's employment was "principally localized" in Wyoming. To make that

determination, we look to the definition: "[E]mployment is principally localized where: (i) The employer has a principal place of business within the state established for legitimate business purposes; *and* (ii) The employee regularly works at or from that place of business." Id. § 27-14-301(b) (emphasis added).

Mr. Stuart asserts that because Northwinds issued his paychecks and performed other administrative tasks related to his employment from its Wyoming office, and further, because Northwinds has no other "place of business," he must have worked "at or from" Northwinds' Wyoming office. In supporting this assertion, Mr. Stuart cites to Wessel v. Mapco, Inc., 752 P.2d 1363 (Wyo. 1988), where an employee's estate brought a wrongful death claim against, *inter alia*, two co-employees of the deceased worker. Id. at 1364. The deceased employee had been part of a pipeline maintenance crew that worked out of Rock Springs, Wyoming, but his work-related death occurred while he was working in Colorado. Id. at 1365–66. At the time, the Wyoming Act allowed judgments against co-employees if their transgression amounted to "culpable negligence," while the Colorado Act barred such actions. Id. at 1366–67. The court looked to the Wyoming Act's extraterritoriality statute in effect at the time to determine whether that Act encompassed the event in question. The statutory provision read as follows:

> If an employee [suffers an injury outside the state for which] he . . . would have been entitled to the benefits provided by this act had the

injury occurred within this state, the employee . . . [is] entitled to
the benefits provided by this act, if at the time of the injury:
    (i) His employment is principally localized in this state.

W.S. 1977 § 27-12-208(a) (1983 Repl. Pam.). The court concluded that the employment was principally localized in Wyoming, and therefore, that application of the Wyoming Act prevented recognition of the Colorado Act's exclusive remedy provision.[1] Wessel, 752 P.2d at 1370–71. As Mr. Stuart claims, the Wessel court did determine that the employment was principally localized in Wyoming in part because the employer paid compensation and remitted unemployment and workers' compensation taxes from its Wyoming office. Id. at 1371. Mr. Stuart, however, makes no mention of the other Wyoming factors that the Wessel court considered, including: base of operation, center of work, source of remuneration, existence of a facility from which the employee received his orders, and post-job return base. Id. Given that Mr. Stuart entered into his employment contract with Northwinds in Colorado and performed work for Northwinds only in Colorado, we agree with the district court that Mr. Stuart's employment was not principally localized in Wyoming.

Mr. Stuart claims that this interpretation of the statute renders the

---

[1]The Wessel court also apparently assumed without deciding that the word "benefits" as used in the statute included the right to bring a common-law cause of action. Cf. Shaw v. Layton Const. Co., 872 P.2d 1059, 1062–63 (Utah Ct. App. 1994) (concluding that the term "benefits" as used in the Utah worker's compensation act did not include a common-law cause of action).

language "at or from" superfluous, because, given that Northwinds only has a "place of business" in Wyoming, Mr. Stuart in effect works "at or from" nowhere. We disagree and think it sufficient to point out that the purpose of the statute is to reveal those employment relationships to which the Wyoming Act applies, not to define every conceivable employer-employee relationship that might exist in the modern-day working world.

### Comity

Even were we to find that § 27-14-301 does not control the outcome of this case, we conclude that the Wyoming Supreme Court, as a matter of comity, would recognize the Colorado Act's exclusive remedy on the facts of this case. It has been recognized that the workers' compensation acts of two different states can apply to the same injury, as long as "each state has a 'more-than-casual' interest in the case." Garcia v. Am. Airlines, Inc., 12 F.3d 308, 310 (1st Cir. 1993) (quoting 4 Arthur Larson, Workmen's Compensation Law § 86.00, at 16-48 (1992)). Wyoming, as the state of Mr. Stuart's residence and the state from which he received workers' compensation, has a valid interest in the event. See Crider v. Zurich Insur. Co., 380 U.S. 39, 41 (1965). Yet the conclusion that the Wyoming Act applies to Mr. Stuart's injury means only that there is no bar to Mr. Stuart's cause of action under *Wyoming* law. See Wyo. Stat. Ann. § 27-14-104(a)

- 10 -

(Michie 2001) (rights and remedies of the Wyoming Act do not supersede rights and remedies against persons other than the employer). Whether or not the Wyoming Supreme Court would recognize the statutory bar under *Colorado* law requires consideration of other factors.

Mr. Stuart argues that applying the Colorado Act's statutory employer immunity would conflict with Wyoming law and would be repugnant to the Wyoming Constitution and against its public policy. CIG contends that, given the weighty Colorado contacts and interests in this case, the Wyoming Supreme Court would recognize CIG's statutory employer immunity. With the exception of <u>Wessel</u>, the Wyoming Supreme Court has never addressed whether or not to apply the exclusive remedy provision of a sister State to a non-employer. The <u>Wessel</u> court, however, rested its decision on the interpretation of "principally localized" within the extraterritoriality statute and never addressed the issue of comity. <u>See</u> <u>Wessel</u>, 752 P.2d at 1365 (stating that § 27-12-208 was dispositive). In the absence of any statutory command, the Wyoming Supreme Court would have to resolve the question using court-developed principles of comity.

When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted with that issue "must predict how [the State's] highest court would rule." <u>FDIC v. Shuchmann</u>, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, the federal court is "free to consider all resources

- 11 -

available, including decisions of [Wyoming] courts, other state courts and federal courts, in addition to the general weight and trend of authority. Id. (citing Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994)). The Wyoming Supreme Court has described comity "as the recognition which the courts of one state give to the laws of another state as a matter of respect and courtesy." Wheeler v. Parker Drilling Co., 803 P.2d 1379, 1381 (Wyo. 1991) (internal citations omitted). The court has limited the extent of comity, however, so that another state's law "will not be given effect if it is contrary to the public policy of this state." Id. (citing Studebaker Bros. Co. v. Mau, 82 P. 2 (1905)).

CIG refers to the Wheeler case as one supporting the conclusion that the Wyoming Supreme Court would recognize the Colorado Act's statutory employer immunity. In Wheeler, the Wyoming Supreme Court addressed a certified question asking if Wyoming would apply principles of comity to recognize the exclusive remedy provision of the Oregon Workers' Compensation laws. 803 P.2d at 1380. A worker who had been hired in Wyoming was subsequently transferred to Oregon where he suffered a work-related injury. Id. The employer had discontinued Wyoming workers' compensation coverage after the transfer, and then provided workers' compensation coverage through the Oregon system which in turn provided benefits to the employee after his injury. Id. The Wyoming Supreme Court limited its task to determining whether Oregon's

exclusive remedy provision was contrary to the public policy of the state and whether the court would recognize the provision "as a matter of interstate comity." Id. at 1382. Without much discussion, the court answered the certified question by "stating that we will recognize the exclusive remedy provisions . . . by applying the principles of comity." Id. at 1383. For our purposes, Wheeler is of limited persuasive value as it addressed an exclusive remedy provision for the direct employer that paralleled Wyoming's own exclusive remedy provision. See id. at 1382–83 (reviewing statutory provisions of both states).

Mr. Stuart contends that the Wheeler case is inapposite because recognizing statutory employer immunity to a third-party such as CIG is repugnant to the Wyoming Constitution. Specifically, Mr. Stuart points to Article 10, § 4 of the Wyoming Constitution, which provides, in pertinent part,

> No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. . . . The right of each employee to compensation from [the Wyoming workers' compensation] fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing . . . to the fund.

Wyo. Const. Art. 10, § 4; see also Venes v. Heck, 642 F.2d 380, 385 (10th Cir. 1981) (remanding case to district court for consideration of whether the Wyoming Constitution prevented application of the Colorado Act's exclusive remedy when the injury occurred in Wyoming). Mr. Stuart argues that because the Wyoming Constitution and § 27-14-104 only provide protection to *employers*, recognizing

the Colorado Act's exclusive remedy to CIG, a non-employer, would contravene to Wyoming's public policy. We disagree that recognizing the Colorado Act in this case would rise to the level of repugnancy such that it would violate Wyoming public policy. The Wyoming Supreme Court has held that Article 10, § 4 treats separately "limitations in amount" from a "right to recover." See Mills v. Reynolds, 807 P.2d 383, 390 (Wyo. 1991) (internal citations omitted). The fact that recognition of Colorado's exclusive remedy would bar Mr. Stuart's cause of action does not necessarily lead to the conclusion that it violates Wyoming's public policy.

When we consider the weight of Colorado's interests against the weight of Wyoming's interests in this case, we are convinced that recognition of the Colorado Act's bar to Mr. Stuart's cause of action against CIG would not violate Wyoming public policy. The injury occurred in Colorado, Mr. Stuart effected his employment contract with Northwinds in Colorado, and as far as any relationship between Mr. Stuart and CIG is concerned, the reasonable expectations of the parties must have been such that all would have anticipated Colorado law to apply. See Allstate Insur. Co. v. Hague, 449 U.S. 302, 327 (1981) (Stevens, J., concurring) (stating that the "desire to prevent unfair surprise to a litigant has been the central concern in this Court's review of choice-of-law decisions").

Indeed, our consideration of the interests of Colorado and Wyoming in this

case compels us to decide that the Wyoming Supreme Court would hold that principles of comity should be applied to recognize the Colorado Act's exclusive remedy provision. Although Wyoming may have an interest in recouping the costs of workers' compensation benefits from non-employers, see Wyo. Stat. Ann. § 27-14-105(a) (Michie 2001) (requiring credit against Wyoming benefits for benefits received from other sources), Colorado's interest in substituting "a limited but certain remedy for the former remedy in tort" is one that reflects the broader principles of workers' compensation law. Garcia v. Am. Airlines, Inc., 12 F.3d 308, 312 (1st Cir. 1993) (citing 4 Arthur Larson, Workmen's Compensation Law § 88.13, at 16-187 (1992)). Colorado's interest in this case is more than an abstract or passive one; the Colorado Act provides the exclusive remedy to statutory employers only if they ensure that the employees of subcontractors are covered by workers' compensation under the Colorado Act. See Colo. Rev. Stat. § 8-41-401(1)(b) (2001). CIG complied with this provision, see Aplt. App. at 40 (certificate of insurance with CIG as a named insured), thus guaranteeing to Mr. Stuart the ability to obtain benefits under the Colorado Act if he had so chosen. See Colo. Rev. Stat. § 8-41-301(1)(a); Monolith Portland Cement v. Burak, 772 P.2d 688, 689 (Colo. Ct. App. 1989) (jurisdictional prerequisites of Colorado Act are met if a substantial portion of the employee's work is done in Colorado combined with an injury or employment contract in

Colorado).

Our decision is in accord with the decisions of other state courts. In Wilson v. Faull, 141 A.2d 768 (N.J. 1958), described as a "leading case" on this issue, Restatement (Second) of Conflict of Laws § 184, Rptr's. Note to cmt. b (1971), the New Jersey Supreme Court chose to recognize Pennsylvania's exclusive remedy to a statutory employer despite the lack of such protection under New Jersey law. In Wilson, a New Jersey resident was injured in Pennsylvania while working for his New Jersey employer, who had subcontracted work with a Pennsylvania general contractor. Wilson, 141 A.2d at 111. The Wilson court found that the fact that the Pennsylvania Act made the general contractor primarily liable for workers' compensation coverage on the employees of subcontractors "effectuate[d] the same basic compensation policy as New Jersey—certainty of remedy and absolute but limited and determinate liability." Id. at 123–24. The New Jersey Supreme Court adhered to the Wilson decision thirty years later, when it chose to recognize South Carolina's statutory employer immunity in a tort action by a New Jersey resident who was injured in South Carolina. Eger v. E.I. Du Pont DeNemours Co., 539 A.2d 1213, 1220 (N.J. 1988). When presented with similar facts, other state courts have decided this issue in the same manner, see, e.g. Farias v. Mattel, Inc., 735 P.2d 143, 145 (Ariz. Ct. App. 1986) (applying Florida exclusive remedy where the only Arizona

contact was the injury); Tucci v. Club Mediterranee, S.A., 107 Cal. Rptr. 2d 401, 411–12 (Cal. Ct. App. 2001) (applying Dominican Republic's exclusive remedy, despite existence of California employment contract, because Dominican Republic's interests dominated); Marion Pow. Shovel Co. v. Hargis, 698 So. 2d 1246, 1247 (Fla. Ct. App. 1997) (Florida exclusive remedy applied where injury occurred in Florida and only non-Florida contacts were the residence of the employee and subcontractor), as have federal courts addressing the issue. See, e.g., Garcia, 12 F.3d at 313 (determining that Puerto Rico would recognize Florida's exclusive remedy where employee performed most of his work outside Puerto Rico); Jonathan Woodner Co. v. Mather, 210 F.2d 868, 874 (D.C. Cir. 1954) (applying Maryland exclusive remedy where it was not violative of District of Columbia's public policy and the injury occurred in Maryland); Littlefield v. Mobil Explor. & Prod., No. Amer., Inc., 988 F. Supp. 1403, 1407–08 (D. Utah 1996) (predicting that Utah courts would recognize Colorado exclusive remedy where Colorado interests predominated), aff'd, 131 F.3d 152 (10th Cir. 1997).

Mr. Stuart cites Braxton v. Anco Elec., Inc., 409 S.E. 2d 914 (N.C. 1991), as persuasive authority for refusing to recognize the Colorado Act's exclusive remedy provision. In Braxton, the Supreme Court of North Carolina refused to apply Virginia's exclusive remedy to an accident that occurred in Virginia. Braxton, however, is distinguishable from this case in that the *only* Virginia

- 17 -

contact was the injury itself. Id. at 916. All the parties were North Carolina citizens and the plaintiff's contract of employment was effected in North Carolina. Id.; see also Simaitis v. Flood, 437 A.2d 828 (Conn. 1980) (refusing to recognize Tennessee barrier to suit where the only Tennessee contact was the injury itself); Shaw v. Layton Const. Co., 872 P.2d 1059 (Utah Ct. App. 1994) (refusing to recognize Nevada barrier to suit when the only Nevada contact was the injury). In this case, the Colorado contacts are simply too substantial to find that a Wyoming court would choose to ignore the Colorado Act's provisions and thereby upset the "fundamental *quid pro quo*" that underlies the basic principles of workers' compensation law. Garcia, 12 F.3d at 312.

Our conclusion is also in accord with the relevant treatises on this issue.

> It is generally held that, if a damage suit is brought in the forum state by the employee against the employer or statutory employer, the forum state will enforce the bar . . . of a state that is liable for workers' compensation as the state of employment relation, contract, or injury.

Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 144.01[2], at 144-2 (2000). Mr. Stuart cherry-picks from one treatise when he quotes,

> [A] defendant will be accorded immunity from tort . . . if he is given such immunity by the workmen's compensation statute of any state under which he is required to provide insurance against the particular risk and under which the plaintiff has already obtained an award for the injury.

- 18 -

Aplt. Br. at 21 (quoting Restatement (Second) of Conflict of Laws § 184 cmt. b (1971) (emphasis added by appellant)). That comment, however, goes on to state,

> Even if no workmen's compensation award has as yet been obtained, a defendant will also be accorded immunity from tort . . . if he is given such immunity by the workmen's compensation statute of a state under which he is required to provide insurance against the particular risk and under which the plaintiff could obtain an award for the injury if this state is the state (a) where the injury occurred . . . .

Restatement (Second) of Conflict of Laws § 184 cmt. b (1971). As this provision of the Restatement clearly applies to this case, as well as the general rule stated in Larson, supra, our decision is therefore reinforced by the relevant authorities on this issue.

Because we have affirmed the decision of the district court on other grounds, we need not reach the constitutional issue of whether the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, mandates recognition of the Colorado Act's exclusive remedy provision. Finally, Mr. Stuart had filed a motion to certify to the Wyoming Supreme Court the issues raised on this appeal. Such motions are never compelled, see Lehman Bros. v. Schein, 416 U.S. 386, 390–91 (1974), and, as here, we generally will not certify such motions when the party seeks certification only after receiving an adverse decision from the district court. Enfield v. A.B. Chance Co., 228 F.3d 1245, 1255 (10th Cir. 2000). As such, we deny Mr. Stuart's motion for certification.

Mr. Stuart's motion for certification of questions of state law is DENIED.

The judgment of the district court is AFFIRMED.