**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PERRY ODOM, and CAROLYN
ODOM,

   Plaintiffs - Appellants,

v.

PENSKE TRUCK LEASING CO.,
L.P.,

   Defendant - Appellee,

and

HENDRICKSON USA, LLC,

   Defendant.

No. 17-6065

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:16-CV-00442-W)**

---

Daniel E. Bryan III, Lane M. Clausen with him on the briefs, Hornbeek Vitali &
Braun P.L.L.C., Oklahoma City, Oklahoma, for Appellants.

L. Earl Ogletree, Cameron R. Capps with him on the brief, Wiggins Sewell &
Ogletree, Oklahoma City, Oklahoma, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

This appeal concerns the scope of Oklahoma's recently modified workers' compensation regime. Perry Odom suffered serious injuries when a semi-trailer collapsed on him at work. His employer—Penske Logistics—did not own the trailer, but his employer's sole stockholder—Penske Truck Leasing—did. Odom and his wife sought to recover from Penske Truck Leasing through a personal injury action in federal court. The district court dismissed their complaint, reasoning Oklahoma's workers' compensation scheme as applied here shielded an employer's stockholders from employee claims arising out of a workplace injury.

The Odoms appealed, challenging the district court's interpretation of the Oklahoma statute. We certified the interpretive question to the Oklahoma Supreme Court. We have received an answer making it clear the district court applied an incorrect legal standard in dismissing this case. We therefore reverse and remand for further proceedings.

## I. Background

At this stage of the proceedings, we assume the truth of the facts alleged in the Odoms' complaint.

Perry Odom worked for Penske Logistics in Oklahoma City, Oklahoma. On July 27, 2015, Odom suffered life-threatening injuries when a trailer equipped with an air suspension system collapsed on him, striking his head. In addition to pursuing relief from the Oklahoma Workers' Compensation Commission, Odom

-2-

and his wife filed this diversity action in the United States District Court for the Western District of Oklahoma. *See* 28 U.S.C. § 1332. As relevant here, the Odoms alleged the trailer's *owner*, Penske Truck Leasing Co., L.P., negligently inspected, tested, repaired, serviced and maintained the trailer, and then failed to preserve evidence critical to this action.

As it turns out, however, Penske Truck Leasing *also* owned Odom's employer, Penske Logistics, as a corporate subsidiary. On this basis alone, Penske Truck Leasing moved to dismiss the Odoms' action for failure to state a claim. It argued the exclusive-remedy provision of Oklahoma's workers' compensation statute barred civil suits against it based on workplace injuries suffered by Penske Logistics employees.

The district court granted the motion. It read the Oklahoma statute to immunize both employers *and* their stockholders from liability for work-related negligence. As a result, the court agreed dismissal was in order so long as Penske Truck Leasing could prove an ownership interest in Penske Logistics. In subsequent briefing, Penske Truck Leasing offered an employee affidavit and a corporate data sheet both establishing that fact. The Odoms did not refute this evidence, and have not challenged it here. Accordingly, the district court dismissed the case.

The Odoms appealed. Uncertainty over the proper interpretation of the statute led us to solicit the view of the Oklahoma Supreme Court. *See Odom v.*

*Penske Truck Leasing Co.*, 704 F. App'x 780 (10th Cir. 2017) (unpublished); *see* 10th Cir. R. 27.2(A)(1); *see also* Okla. Stat. tit. 20, § 1602 (granting the power to answer certified questions). We asked whether the statute's "exclusive-remedy provision bar[s] an employee from [suing] a stockholder of his employer" in tort, "even if . . . liability would arise from duties independent of the employment relationship." *Odom*, 704 F. App'x at 782. The Oklahoma Supreme Court accepted our certified question and issued an opinion answering it. *See Odom v. Penske Truck Leasing Co.*, 415 P.3d 521 (Okla. 2018). Applying that answer, we now decide the Odoms' appeal.

## II. Analysis

In light of the Oklahoma Supreme Court's interpretation of Oklahoma law, we must remand the Odoms' action for further proceedings.

We begin with the statutory language. The Oklahoma statute in question provides that "[t]he rights and remedies granted to an employee" under the Oklahoma Administrative Workers' Compensation Act are "exclusive of all other rights and remedies" an employee or his spouse may assert against "the stockholder . . . of the employer" for "injury, illness, or death." Okla. Stat. tit. 85A, § 5(A). It goes on, however, to say "[n]o role, capacity, or persona of any . . . stockholder *other than* . . . the role of employer . . . shall be relevant" under the law. *Id.* (emphasis added).

-4-

The Oklahoma Supreme Court held this language ambiguous with respect to stockholder liability. *See Odom*, 415 P.3d at 531. It thus sought "a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." *Id.* at 531. Accordingly, the court rejected a reading of the statute that would offer substantive immunity "to potentially legally distinct non-employer entities such as stockholders, regardless of how passive their connection to the employment relationship is." *Id.* at 532. Instead, it held "[a] stockholder may . . . [receive] exclusive remedy protections . . . if [it] *possesses a persona that is not independent from that of the employer*." *Id.* at 532–33 (emphasis added) (bold omitted). In other words, a stockholder enjoys immunity while "acting in the role of employer." *Id.* at 533. Courts must determine the stockholder's persona "on a case-by-case basis," *id.*, looking not to "activity or relationship, but identity," *id.* at 532; *see also id.* ("The language of the statute implies an inversion of the traditional dual-capacity doctrine set out in *Weber*[ *v. Armco, Inc.*, 663 P.2d 1221 (Okla. 1983) (abrogated by statute)]."); *cf. Weber*, 663 P.2d at 1224–27 (explaining the "dual-capacity doctrine," *id.* at 1226).

The district court did not consider Penske Truck Leasing's "persona" or "identity," *Weber*, 663 P.2d at 1225, as Oklahoma law requires, *see Odom*, 415 P.3d at 532–33. Indeed, it had no occasion to. The evidence Penske Truck

Leasing filed below pertained only to its ownership of Penske Logistics, and the district court dismissed this action based on that fact alone.

Accordingly, we must vacate the district court's dismissal and remand for further proceedings. To obtain immunity from liability under Oklahoma law, Penske Truck Leasing must prove more than mere ownership of Penske Logistics. As the Oklahoma Supreme Court explained, Penske Truck Leasing must prove it "possessed" a "persona" or "identity" "not independent from" Penske Logistics.

## III. Jurisdiction

We note also, for the benefit of remand, that Penske Truck Leasing's motion to dismiss *did not* constitute a challenge to the district court's subject-matter jurisdiction.

Penske Truck Leasing styled its motion to dismiss as challenging the Odoms' statement of a valid claim to relief. *See* Fed. R. Civ. P. 12(b)(6). The district court, however, construed the motion as a challenge to its subject-matter jurisdiction. *See id.* at 12(b)(1). It reasoned if Penske Truck Leasing indeed fell under the protections of the exclusive-remedy provision, exclusive jurisdiction for Odom's claim would rest with the state's Workers' Compensation Commission.

But when a state proscribes its own courts' jurisdiction over particular subject matter, it does not divest the authority of federal courts within its borders. This is because, as an axiom of our federal system, Congress alone defines the lower federal courts' subject-matter jurisdiction. *E.g. Kontrick v. Ryan*, 540 U.S.

-6-

443, 452 (2004); *see also* U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). Congress must, of course, adhere to constitutional limits in doing so. *See* U.S. Const. art. III, § 2, cl. 1 (limiting federal "judicial Power" to specified "Cases" and "Controversies"). Those limits, however, do not concern the states' allocation of their own judicial resources. *See id.*

This is not to say a federal court may impose liability based on claims a state has created but deprived its courts the power to adjudicate. Since the Supreme Court's decision in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the federal courts have endeavored to minimize variation between federal and state adjudication of state-created rights. Pursuant to that mission, the Supreme Court has explained "a right which local law creates but . . . does not supply with a remedy is *no right at all* for purposes of enforcement in a federal . . . diversity case." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) (emphasis added). Thus, when a state closes its own courthouse doors on a claim it has created, a federal court applying that state's laws may not grant relief on that claim either. *Id.*; *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1132–33 (9th Cir. 2011); *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778–79 (7th Cir. 2002); *see also Angel v. Bullington*, 330 U.S. 183, 191–92 (1947) (first describing the principle). But crucially, this is because the state jurisdiction-stripping

-7-

provision is so wrapped up with the state-created right that it counts as substantive law for *Erie* purposes. *See Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945).

It is true that our opinion in *Stuart v. Colorado Interstate Gas Company*, 271 F.3d 1221 (10th Cir. 2001), might seem to strain these principles. In that case, we said the federal courts would not "take jurisdiction" over a diversity action "unless the plaintiff ha[d] asserted a claim cognizable in the state courts." *Id.* at 1225 (quoting 13B Charles Alan Wright et al., Federal Practice and Procedure § 3602, at 375 (2d ed. 1984)). The parties in *Stuart* agreed that if Colorado law applied, Colorado's workers' compensation regime would provide the exclusive remedy. *Id.* We therefore held a determination that Colorado law *did* apply sufficed to support dismissal for want of subject-matter jurisdiction. *See id.* at 1231.

Perhaps *Stuart* can be read only as justifying a *prudential refusal* to exercise subject-matter jurisdiction Congress has granted. *See id.* at 1224–25. But in any event, we should construe that decision narrowly due to the Supreme Court's late emphasis on the federal courts' "virtually unflagging" duty to hear and decide cases within our jurisdictional grants. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). And though *Erie*

provides an alternate justification for federal courts to incorporate state door-closing statutes into diversity suits, it also requires adherence to the Federal Rules of Civil Procedure in actions touching those statutes. *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). By this logic, when a party goes beyond the pleadings in invoking a state door-closing statute at the motion-to-dismiss stage, district courts should consider the motion under Rule 56 rather than Rule 12(b)(1). *See* Fed. R. Civ. P. 12(d).

And even if *Stuart* remains good law, it is not particularly relevant to this case. Indeed, we cabined it substantially in *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220 (10th Cir. 2004). In *Radil*, the parties agreed Colorado law governed but disputed the exclusive-remedy provision's application to the facts. *See id.* at 1225. We observed—as we had not in *Stuart*—that Colorado's exclusive remedy provision provided a *waivable affirmative defense* to liability, not an obstacle to state court jurisdiction. *See id.* We therefore held a dispute over "*the application* of the exclusivity defense bar" went to a claim's merit, not our jurisdiction. *Id.* at 1226 (emphasis added).

This case thus falls within *Radil*'s ambit rather than *Stuart*'s. Penske Truck Leasing invoked Oklahoma's exclusive-remedy provision as a substantive defense to liability, not a jurisdictional limitation. This is consistent with the Oklahoma courts' treatment of the statute. *See Strickland v. Stephens Prod. Co.*, 411 P.3d 369, 372 (Okla. 2018); *Shadid v. K 9 Univ., LLC*, 402 P.3d 698, 699 (Okla. Civ.

App. 2017); *see also Benedetti v. Climax Energy Co.*, 415 P.3d 43, 45 (Okla. 2018) (treating a previous version of the provision as providing "statutor[y] immun[ity] from civil liability"); *cf. Lind v. Barnes Tag Agency, Inc.*, 2018 WL 2016092, at *2 n.1 (Okla. 2018) (describing a challenge to subject-matter jurisdiction under a previous version of the provision as "intertwined with the merits of the controversy" and treating it as a motion for summary judgment). And it is yet unclear whether the Oklahoma statute actually strips jurisdiction from the Oklahoma courts.

In sum, an invocation of Oklahoma's exclusive-remedy provision that goes beyond the pleadings should be reviewed as a motion for summary judgment, not as a challenge to federal subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(d).

## IV. Conclusion

For the reasons given above, we **REVERSE** the district court's order and **REMAND** for further consideration consistent with this opinion.